W. R. HENRY ET AL *v.* T. R. HENDERSON, EXECUTOR.

*[60 South. 33.]*

1. WILLS. *Construction. Intention of testator. Construction of Statutes. Perpetuities. Lives in being. Code 1906, sections 2765-2770.*

The sole object of construing a will is to arrive at the intention of the maker; and this intention must be gathered from the whole instrument, construed in the light of the circumstances surrounding the maker at the time of the execution thereof.

2. WILLS. *Construction. Estate acquired. Code 1906, section 2770. Remainders.*

Where a testatrix after disposing of a portion of her real estate by will, provided that the remainder of her real estate should go to her two nephews for and during their natural lives and at their death to go to the heirs of their bodies, and further provided that in the event of a failure of issue by the said nephews, that on their death all property bequeathed to them should go to the nephews and nieces of her husband. Under Code 1906, section 2770, her nephews became tenants in common of the property and not joint tenants, and the limitation over after their death did not take effect until the death of both of them.

3. RE-ENACTMENT OF STATUTES JUDICIALLY CONSTRUED. *Construction adopted by legislature.*

Where a statute has been construed by the highest court of a state and afterwards re-enacted in substantially the same terms, the legislature by such re-enactment adopts along with the statute such construction.

4. Wills. *Rule against perpetuities.*

The rule against perpetuities is not a rule of construction; but a peremptory command of law. It is not like a rule of construction which is to determine intention but its object is to defeat intention; therefore every provision in a will is to be construed as if the rule against perpetuities did not exist and then to the provisions so construed the rule is to be remorselessly applied.

5. Perpetuities. *Lives in being.　Code 1906, section 2765.*

Under Code 1906, section 2765, so providing, a testatrix could devise to a succession of donees then living not exceeding two, and to the heirs of the body of the remainderman, and in default thereof, to the heirs of the donor in fee simple. And so where the testatrix directed that in the event her husband survived her, her executor should apply the income of her estate to his support and after making certain specific bequests further provided that the remainder of her estate should go to two nephews for their lives, and at their death to the heirs of their body, and in the event of their death without issue, to other parties. In such case the devise to her two nephews was in effect a devise to each for the life of the survivor, and only the life of the survivor could be counted in the succession of donees and so construed the will did not violate the statute against perpetuities.

Appeal from the chancery court of LeFlore county.

Hon. M. E. Denton, Chancellor.

Suit by T. R. Henderson, executor, and others against W. R. Henry, and others, to construe a will. From a judgment construing the will, defendant appeals.

For a former decision of this case see 101 Miss. 751.

The following are the will and codicils referred to in the opinion:

"Last Will and Testament of Mrs. L. H. Henry.

"I, Lavinia Helen Henry, of Greenwood, Mississippi, being in good bodily health, and of sound mind and disposing mind and memory, calling to mind the frailty and uncertainty of human life, and being desirous of settling my worldly affairs and directing how the property with which God has pleased to bless me, shall be disposed of after my decease while I have strength and capacity so to do, do make and publish and declare this my last will

and testament, hereby revoking all other last wills and testaments by me heretofore made.

"First: I commend my immortal being to Him who gave it, and my body to the earth to be buried with no ostentation, by my executor hereinafter named.

"As to all my property real, personal and mixed of which I shall die possessed or to which I shall be entitled at the time of my decease, I devise, bequeath, and dispose of as follows:

"My will is, that all my just debts and funeral charges shall by my executor hereinafter named be paid out of my estate as soon after my decease as convenient.

"The three acres more or less immediately behind the home of A. M. Craig, in the town of Greenwood, and which land is now enclosed by the said Craig, I give and bequeath to Mrs. Chappie Craig.

"All the remainder of the property now owned by me, in the town of Greenwood, that is real estate, it is my will shall be sold by my executor either at public or private sale, as he may think best, after he and S. L. Brister of Greenwood, shall decide that it is advisable to sell the same; said sale to be made on such terms and in such manner as they may think best. It being my intention for said property to be sold whenever in the judgment of said executor and the said Brister the growth of the town may require, they to use their best judgment.

"The house and lot in said town now occupied by Robert Lückett and near my residence, I give and bequeath to Mrs. R. W. Williamson for and during her natural life, and at her death said house and lot to be sold by said executor with the advice of the said Brister as above directed.

"It is my will that the proceeds of the sale of said real estate in the town of Greenwood, shall be loaned out or invested as the said executor shall think best, and the income alone to be given to Joseph Ditto Craig and his brother Loraine Craig until they both become of age, and on the maturity of the said Loraine Craig, the *corpus* of the proceeds of the sale of said real estate shall be

equally divided between both of said brothers; should either die before maturity, then the survivor to inherit the whole on coming of age.

"I give and bequeath to Asa Henry, commonly known as Gus Henry, the following described land in Leflore county, to wit: The south half of the north half and all that portion of the southwest quarter owned by me which consists of about ten acres, in section 20, township 19, range 1 east, to have in fee-simple.

"I give and bequeath to J. P. Henry, the nephew of my husband, the following land in Leflore county, to wit: Lots 2 and 6, in section 29, and the southeast quarter of section 20, all in township 19, range 1 east, to have and to hold in fee simple.

"The remainder of all my real estate I give and bequeath to Joseph Ditto Craig and his brother Loraine Craig, for and during their natural lives, and at their death to go to the heirs of their bodies, with this proviso, that the income from said property first be applied to the payment of the legacies hereinafter named, and after said legacies are paid then said income shall also be charged with the payment of the annuities hereinafter named, and after the payment annually of said annuities then the remainder of said income shall be paid to said brothers by said executor.

"It is my further will that my said executor shall take and keep exclusive charge of all said real estate not disposed of as aforesaid, or to be disposed of, until said Loraine Craig shall become of age, and on the maturity of said Loraine Craig, who is the younger of the said two brothers, then said real estate not disposed of as herein provided shall be turned over to them together with all the personal property on said land for their natural lives as aforesaid, with all monies on hand belonging to them as herein mentioned.

"It is my will that all the personal property now on or which may be on my plantation at my decease shall be

kept on said plantation for the use and benefit of the same.

"It is my further will that my executor shall employ some competent man to manage and control said plantation until Loraine Craig shall become of age, if in the opinion of said executor it shall be to the best interest of said estate to do so. Said executor to exercise his best judgment for the interest of said estate in the management of said property.

"It is my further will that said executor shall as soon after my decease as practicable, pay the following parties the amounts set opposite their respective names, to wit:

"To Thomas Henry's sole daughter, a niece of my husband, whose name I cannot now give, the sum of $1,000.

"To the sister of Dick Elliott, which sister is a niece of my husband, being unable to call her name, the sum of $1000. Both of said parties live in North Carolina.

"To Mrs. Chappie C. Craig, the sum of $1000; Mrs. Jennie Colmery, the sum of $1000;. Mrs. Anna Deles, of Yazoo City, the sum of $1000; Mrs. Annie McNeill the sum of $1000; Mrs. Susie Yerger the sum of $500; Judge R. W. Williamson the sum of $500; Mrs. Helen Chapman the sum of $500; and should her home be encumbered, then I wish my executor to see that the encumbrance is credited with said sum: Mrs. Lizzie Payne the sum of $100; Charlie Wells the sum of $100; Mrs. M. Ellington the sum of $100.

"Should there not be enough money on hand at my decease with which to pay said legacies, then it is my will that what money may be on hand, after all debts have been paid, shall be prorated in the payment of the same and the remainder of said legacies to be paid from the income from the plantation as soon as practicable.

"It is my further will that the following accounts shall be paid by my executor annually to the parties herein named during their natural lives:

"Mrs. Henrietta McCaskill, the widow of Allen McCaskill, the sum of $300 per year. My reason for giving

this annuity to Mrs. McCaskill is this:    During the war
my husband purchased from the husband of the said Mrs.
McCaskill certain real estate in this county and paid for
the same during the war in the money then used in paying
debts, to wit: Confederate money, which money after-
wards became worthless on account of the failure of the
Confederacy.    While recognizing there is no legal liability
on either me or my husband, and also recognizing the fact
that there was no fraud or intentional injury perpetrated
in the payment of said debt with Confederate money, yet
I have always felt that an injury was suffered and that
the property was acquired without a just moral considera-
tion, and I, therefore, in this way and at this time, take
occasion to alleviate in some way the hardships of ad-
versity under which she is now surrounded.

"To Mrs. Willie Kennan, formerly Miss Willie Luts,
the sum of $300 per year: it may be that I gave her mar-
ried name incorrectly, if so, then I desire my executor to
ascertain her correct married name.    Said party is a
relative of mine and once lived with me.

"To Mrs. Priscilla Chickering the sum of $300 per year.

"To Mrs. Mary Caldwell the sum of $100 per year.

"Said above named annuities are to be a charge on the
income from said plantation and are to be paid from the
same.    By the use of the word plantation, I mean all
farming lands of which I may die possessed, except those
herein disposed of.

"I give and bequeath to L. P. Yerger the portraits of
myself, Dr. J. P. Henry and my son, Joseph Jackson.

"I give and bequeath to Loraine Craig what is known
as the 'Davis' table, formerly owned by President Jef-
ferson Davis, and to Ditto Craig I give and bequeath the
large mirror in the parlor.

"I give and bequeath to the infant daughter of Mrs. J.
Gardner my diamond ring.

"The remainder of my personal porperty not otherwise
disposed of, I give and bequeath to Mrs. Chappie C.

Craig, with the understanding and proviso that Mrs. Sal-lie Morgan Green shall have the right to select from any household property that I may die possessed of, any one article that she may choose to select, not herein bequeathed to any one else.

"It is my further will that my physicians, Drs. T. R. Henderson and S. L. Brister, shall be paid well for their services to me. I take this method of expressing to them my high and sincere appreciation for the services rendered to me in my last illness.

"It is my further will that my executor shall, as soon as practicable, have my grave and that of my husband enclosed by a strong iron railing fence, and shall also have the grave of the father and mother of my husband, in Berie county, N. C. enclosed by the same kind of fence. Said executor shall also have the two graves of the two brothers of my husband, in the cemetery near Greenwood, also enclosed with an iron railing fence.

"Should my husband outlive me, then it is my will that my property shall be kept intact during his natural life, that is, the income from the same for his support and maintenance.

"Having unbounded confidence in the integrity and good judgment of Dr. T. R. Henderson, I hereby appoint him as my executor to carry out the provisions of my will, and it is my further will that he be released from giving any bond or security as such executor.

"Witness my hand this, the 1st day of July, 1897.

L. H. Henry.

"The above instrument of seven sheets was at the date thereof declared to us by the testatrix, Mrs. L. H. Henry, to be her last will and testament; and she then subscribed the same in our presence as her voluntary act, when we, at her request, signed our names hereto as attesting witnesses, in her presence and in the presence of each other.

"Witness our hands this, the 1st day of July, 1897.

"A. F. Gardner.

"J. K. Allen.

"Whereas, I, L. H. Henry, of Leflore county, Mississippi, have made my last will and testament in writing bearing date of July 1st, 1897, now I do by this writing, which I hereby declare to be a codicil to said last will and testament, declare that it is my further will that the following items in said last will and testament be and the same are hereby revoked and annulled, to wit: That item which gives to Mrs. R. W. Williamson the house and lot in Greenwood, now occupied by Robert Luckett, for and during her natural life: also that item which gives to R. W. Williamson the sum of $500; also that item which gives to L. P. Yerger the portraits of my husband, J. P. Henry, my son, Joseph Jackson, and that of myself; this item is revoked as I prefer for these portraits to be kept in the family. In lieu of said bequests it is my further will that said house and lot now occupied by said Robert Luckett be sold with my other real estate in said city, and that the proceeds of said sale be appropriated in the same way provided in said last will and testament for the proceeds of the sale of the said real estate in said city.

"I hereby give and bequeath to the said Mrs. R. W. Williamson and her husband, R. W. Williamson, in lieu of the above bequest, the sum of $100 each per year for ten years, should either one live so long, which sum my executor shall pay from my estate.

"I give and bequeath to Mrs. Susie Yerger the further sum of $500 in addition to the sum provided to be paid her in my last will and testament.

"I hereby give and bequeath to Mrs. Annie McNeill, in trust, all of said portraits, to hold in her possession until Ditto Craig shall marry, and on that event, it is my will that the said Mrs. McNeill shall give said portraits to the said Ditto Craig as a wedding gift in remembrance of me.

"It is my further will that the item in said last will and testament giving to Asa or Gus Henry and J. P. Henry, certain lands in sections 20, 28, 29, all in tp 19, R 1 East, in Leflore county, be and the same are hereby revoked and annulled.

"I give and bequeath to Walter Henry, my husband's nephew, the sum of $1000, which sum shall be paid by my executor as provided for the payment of the other legacies made by me.

"It is my further will that in the event of the failure of issue by the said Ditto and Loraine Craig, that on their death all property bequeathed to them shall go to the nephews and nieces of my husband, J. P. Henry.

"It is my further will that the growth of the city of Greenwood, shall not be affected, impaired, or prejudiced in any way by any bequest made by me in said last will and testament or in this codicil and in order to prevent any obstacle that might occur to retard the growth of said city by reason of any bequests made by me, I hereby give and grant full power to my executor to sell and convey either at public or private sale as he may think best, any real estate of which I die possessed near to or adjacent to said city, whenever in the opinion of the said executor it shall be to the best interests of said estate and also be of advantage in assisting in the growth of said city; it being my intention to give said executor full power to sell and convey in fee-simple any property they may think desirable to sell at any time in order to advance the best interests of my estate and assist in the growth of said city, he to sell in such lots and on such terms in such way as he shall think best, and the proceeds arising from the sale of any such property shall be invested and appropriated by said executor in the same way as provided in said last will and testament for the proceeds of the sale of real estate now in said city.

"I hereby give and bequeath to Mrs. D. W. Henry and her six children, to wit: Asa or Gus, J. P., Robt., Claude, Pearl and Louise Henry the following described real estate in Leflore county, to have and to hold in fee simple, to wit: South half and northwest quarter and thirty-two acres in the west half of the northeast quarter, said thirty-two acres being all I own in said west half of the northeast

quarter, all in section 23, and the west half of the west half of the northwest quarter in section 24, and that land in said section 24 bought by me from Willis Nero and wife, on the 29th day of October ,1897, the deed to which is recorded on page 445 in Book Number 22, of the records of deeds of Leflore county, and also the north half and the west half of the southwest quarter and the northeast quarter of the southwest quarter of section 26, all in township 19, range 1, east.

"It is my further will that this my present codicil be annexed to and be made a part of last will and testament to all intents and purposes.

"In testament whereof I hereunto set my hand this the 4th day of January, 1898.

"L. H. Henry.

"The above instrument of writing of four sheets, was on the date thereof declared to us by the testatrix, Mrs. L. H. Henry, to be a codicil to be annexed to her last will and testament, and she thus subscribed the same in our presence and declared the same to be her voluntary act and deed, when we at her request sign our names hereto as attesting witnesses, in her presence and in the presence of each other.

"Witness our hands this the 4th day of January, 1898.

"Arch Peteet.

"A. F. Gardner.

"Whereas, I, L. H. Henry of Leflore county, have made my last will and testament in writing bearing the date of July 1, 1897, and also a codicil in writing to said last will and testament bearing date of January 4, 1898, now I do by this writing which I hereby declare to be another codicil to said last will and testament, declare that it is my further will that the bequest made by me to Mrs. D. W. Henry and her six children of certain lands in Leflore county, as shown by said codicil made January 4, 1898, shall not take effect until after the death of my husband and until after all legacies are paid, that is to say

the property bequeathed to her as aforesaid and her children shall be used, controlled and managed by my executor until after the death of my husband and until after legacies are paid; and the income from said property shall be used exclusively for the benefit of my husband and at his death said income shall be used as aforesaid with my other property for the payment of legacies unpaid.

"After his death and after all legacies are paid, then they are to own said property as hereinbefore provided.

"It is my further will that at my death my executor shall use what money is on hand together with the proceeds of the sale of any personal property raised on said plantation, and which may be unsold at my death, and all notes due me, said executor to have the right to sell any of said property at his discretion, in the making and gathering of a crop on said plantation, and should there be more than enough money with which to make and gather said crop, after using the money on hand at my death, together with the proceeds of the sale of said personal property, and of said notes, then my executor who has full authority to act in the premises, shall at his discretion, should there not be enough money with which to pay all legacies herein provided in full, prorate the amount over and above the amount necessary to make and gather the said crop. It being my intention that no legacies shall be paid until after my executor shall become satisfied that he has enough money on hand divided as aforesaid, with which to make and gather said crop. It is my further will that my executor shall at my death take charge of all my property as hereinbefore provided, and that he shall give to my husband the entire income from said property for and during his entire life, subject, however, to this provision, that is to say, that Mrs. D. W. Henry shall receive during the life of my said husband the sum of $300 per year, which sum shall be deducted from the income of said property.

"It is my further will that no annuity hereinbefore provided for shall be due and payable until after the death of my husband and until after all legacies herein provided for are paid in full, except that to Mrs. D. W. Henry.

"It is my request that my husband have paid during his life the legacies hereinbefore provided for, from the income from said property should there not be enough on hand at my death together with the proceeds of the sale of said personal property over and above the necessary expenses of. making and gathering said crop, with which to pay said legacies.

"It is my further will that this my present codicil be annexed to and made a part of my last will and testament to all intents and purposes.

"In testament whereof, I have hereunto set my hand this, the 20th day of January, 1898.

"L. H. Henry.

"The above instrument of writing of three sheets, was on the date declared to us by the testatrix, Mrs. L. H. Henry, to be a codicil to be annexed to her last will and testament, and she then subscribed the same in our presence and declared the same in our presence to be her voluntary act and deed, when we, at her request, sign our names hereto as attesting witnesses in her presence, and in the presence of each other.

"Witness our hand this the 20th day of January, 1898.

"Arch Peteet.

"A. F. Gardner.

"Filed 10-29-09.   C. W. Crockett, Clk."

*Green & Green, F. A. Montgomery,* and *Clarkson & Duls,* for appellant.

*Tim E. Cooper, Whitfield & McNeil,* for appellee.

Counsel on both sides filed very elaborate briefs, but too long for publication.

Argued orally by *Garner W. Green*, and *Marcellus Green*, for appellant and by *A. H. Whitfield, R. V. Pollard* and *T. E. Cooper*, for appellees.

SMITH, C. J., delivered the opinion of the court.

On the 1st day of July, 1897, Mrs. L. H. Henry executed a will, and afterwards added two codicils, the first dated the 4th and the second the 20th day of January, 1898, which will and codicils the reporter is directed to set out in full.

Mrs. Henry died in January, 1898, some time after the 20th and before the 29th day thereof. Her husband survived her about three months, dying on the 11th day of May, 1898. Mrs. Chappie C. Craig, a niece of her husband's, had at the death of Mrs. Henderson two children, Joseph Ditto Craig and Loraine Craig, aged twelve and nine, respectively. Joseph Ditto Craig died in January, 1901, unmarried and without issue, leaving as his heirs at law his brothers Loraine and Raymond Craig, the last-named having been born after the death of Mrs. Henderson. The petition filed in the court below by the executor of this will alleged that Loraine Craig would become of age on the 26th day of November, 1909, and that he would then be called upon to settle with him under the terms of the will; that he had been advised that the nieces and nephews of Dr. J. P. Henry claimed that portion of the estate of Mrs. L. H. Henry which under the will had been devised to Joseph Ditto Craig, and praying that he might be advised as to what his duties were in the premises. All proper and necessary parties were duly served with process, and are now before the court. The decree of the court below, in effect, adjudged that the nieces and nephews of Dr. Henry could not take under the will until after the death of both Joseph and Loraine Craig without issue, and that Loraine succeeded to all of Ditto's rights in the property by virtue of an implied cross-remainder. From this decree the nieces and

nephews of Dr. Henry have appealed to this court, and
are the only ones who have here assigned error. At a
former day of this court judgment was rendered reversing
the decree of the court below, and appellees have now
suggested error therein.

The first question, among many presented to us by the
briefs of counsel, to which we shall address our attention,
is this:   Did the devise over to the nephews and nieces
of Dr. Henry take effect as to the moiety devised to Ditto
immediately upon his death, or was it the intention of the
testatrix that the property should go over as a whole
upon, and not until, the death of both Ditto and Loraine
without issue?   After disposing of a portion of her real
estate, the testatrix disposed of the remainder thereof in
the following language:   "The remainder of all of my real
estate I give and bequeath to Joseph Ditto Craig and his
brother Loraine Craig, for and during their natural lives,
and at their death to go to the heirs of their bodies."
In the first codicil she provided for the contingency of the
death of the two Craigs without issue as follows:   "It is
my further will that in the event of a failure of issue by
the said Loraine and Ditto Craig, that on their death all
property bequeathed to them shall go to the nephews and
nieces of my husband, J. P. Henry."

The sole object of construing a will is to arrive at the
intention of the maker; and this intention must be
gathered from the whole instrument, construed in the
light of the circumstances surrounding the maker at the
time of the execution thereof.   While it may be true that
"no two wills probably ever were written in precisely the
same language throughout, and probably no two tes-
tators ever did die under precisely the same circum-
stances in relation to their estate, family, and friends,"
so that technical rules of law and adjudicated cases are
not of as great assistance in the construction of a will as
they are in the construction of some instruments of a
different character, still they are not to be disregarded

altogether, but should be followed, unless to do so would do violence to the clear intent of the testator.

Before examining the will further in detail, it will not be, therefore, unprofitable for us to ascertain what construction has been put by the courts upon other instruments containing words of this character. It is not necessary for us to wander far afield in this search; for such instruments have several times been under consideration by this court. In *Hawkins* v. *Hawkins*, 72 Miss. 749, 18 South. 479, Mr. C. M. Vaiden and his wife, in conveying to their three nieces a certain lot, used the following language: "We give to them, our said nieces, Lizzie v. Hawkins, Alice V. Herring, and Sallie Cowles Herring, said lot as described, with all appurtenances, emoluments and rents arising from the same during their natural lives, and at their death to the descendants of their bodies in fee, if any they may have, but if they have none to survive them, then, in that event, to the heirs of their brothers and sisters in fee." The court in construing this deed held that by reason of section 2441 of the Code of 1892, now section 2770 of the Code of 1906, these grantees became tenants in common of the property and not joint tenants, but that the duration of the estate was not cut down by the statute, and that the limitation over after their death did not take effect until the death of all of them.

In *Halsey* v. *Gee*, 79 Miss. 193, 30 South. 604, the will of Greenwood Leflore was under consideration, wherein he had devised the land in controversy as follows: "I give and devise to my two grandsons, Greenwood L. Halsey and John B. Halsey, the tract of land known as the 'Big Sand Place,' and in the event that either of my said grandsons should die without issue then it is my will, and I hereby direct, that the land herein devised to him shall go to the surviving grandson, and in the event that both of them die without issue surviving, then it is my will that the land herein devised and bequeathed to them,

together with all the bequests hereinafter made to them, revert to my son, John, and my daughter Rebecca Harris, equally to be divided between them." And the court held that the limitation over to John and Rebecca Harris took effect only on the death of both Greenwood and John Halsey without issue; that the death of either leaving issue destroyed this limitation over. In *Banking Co.* v. *Field,* 84 Miss. 646, 37 South. 139, the third clause of the deed there construed provided that: "On the death of said J. Harris Field, all the property herein conveyed shall vest in the said Bate Field, one-half for herself and the other half she shall hold in trust for the said J. Harris Field. . . . Should the said Bate Field or J. H. Field, Jr., die without issue of the body, the whole property herein conveyed shall vest in the survivor, subject to the rights of the said J. H. Field hereinbefore mentioned, and in case both shall die without issue of their bodies, the whole property shall vest absolutely in the said J. H. Field or his heirs at law, if he be then dead." While the specific point here under consideration seems not to have been the question then before the court, it said: "We think the scheme of the deed is this: . . . To convey the ultimate fee in the property, if both Bate and Harry should die without issue living at the time of their respective deaths, to J. Harris Field, Sr. Bate and Harry took fees determinable upon the contingency of dying without issue living at his or her death, with a conditional limitation over to J. Harris Field, Sr. . . . The limitation to J. Harris Field, Sr., is a conditional limitation over after the death of Bate and Harry, both leaving no issue at their respective deaths." It will be noted that in *Halsey* v. *Gee* and *Banking Co.* v. *Field* the instruments under consideration provided that the limitation over should take effect in event both of the life tenants should die without issue, while in the case at bar the devise and in *Hawkins* v. *Hawkins* the grant is to the life tenants during "their" natural lives, and the limita-

tion over takes effect at "their" death, but this difference in the language of the instruments does not destroy the effect of *Halsey* v. *Gee* and *Banking Co.* v. *Field;* for, as was said by the court in *Baldrick* v. *White*, 2 Bail. (S. C.) 442: "If the property were given to two for life, and at their deaths to their children, if both should die without leaving children, then over, here would be cross-remainders by necessary implication; nothing being given to the remaindermen over until the death of both without children. So it might be if the word 'both' were omitted on the apparent intention to give over the whole property together as one estate, which could not be effected until both were dead without children, and not to limit over the respective shares." These cases should be decisive of this controversy, and ordinarily we would follow them without further citation of authority, but for the fact that they were necessarily overruled by the former opinion rendered herein.

In *Jones* v *Cable*, 114 Pa. 586, 7 Atl. 791, the testator had devised his farm to his two sons in the following words: "I give and bequeath unto my two sons John and Edward Cable, all of my farm after my death to them as long as they do live, and after their death to their children," etc. In construing this will the court used this language: "Our construction of this will is that John and Edward take a life estate, with remainder to their children as purchasers, upon the death of the survivor. It is plain that this was the intention of the testator, for the devise over to the children does not take effect until after 'their' death, which evidently means the death of the survivor. A testatrix in her will gave 'the improvement of my property in trust to' a trustee named, 'the income to be paid equally to my brother and my sister during their natural lives, and at their death the principal I give to my nephews and nieces then surviving.' The brother died after the death of the testatrix, and left the sister surviving. Held, that the whole income of the property was payable there-

after to the sister until her death, until which time the
gift over in remainder to the nephews and nieces was not
to take effect." *Loring* v. *Coolidge et al.*, 99 Mass. 191.
Among other things, the court said in this case that " '
their death' as a point of time is the date when both shall
have deceased."

In *Earle* v. *Fiske*, 103 Mass. 489, the court held that a
clause in a will directing the executors to procure a suit-
able residence for his daughter, Julia, at an expense not
exceeding six thousand dollars, and to hold the same in
trust for her and her son William "during their natural
lives" and "upon the decease of both" devising the prop-
erty over, clearly gave the daughter and her son an inter-
est during their joint lives and the life of the survivor.
In *Douglas* v. *Parsons*, 22 Ohio St. 526, it was held that
"an agreement to pay an annuity to a husband and wife
'during their natural lives' binds the party to pay the
annuity during the joint lives of the husband and wife,
and during the life of the survivor."

In *Smith* v. *Usher*, 108 Ga. 231, 33 S. E. 876, the testator
had devised his land as follows: "I give and devise my
Mixon place  .   .   .   to my two daughters Savannah
and Amelia, to be used and enjoyed by them during their
natural lives, subject to their own control and to be
managed by them as *femme soles*, and should my said
daughters Savannah and Amelia have lawful children,
then at their decease, I give and devise said plantation
to said heirs forever.   But should both of said daughters
die childless, I give and devise said Mixon place to my
grandson Michael Smith, to his heirs and assigns forever."
And the court held that the grandson took no interest in
the land until the death of both of the daughters without
issue.   In *Lillibridge* v. *Adie*, 1 Mason, 234, Fed. Cas.
No. 8,350, Judge STORY, in delivering the opinion of the
court, used the following language:   "The devise over is,
in case Harriet and Clementina should die without issue,
'then my will is that the same shall go to and vest in their

two sisters, Mary and Charlotte.' It is argued that
Harriet and Clementina take as tenants in common, and
not as joint tenants, and that the devise over ought to be
construed to take effect upon the death of either of them
without issues as to the moiety of the party so dying."
And, after holding that Harriet and Clementina took as
tenants in common by virtue of the Rhode Island statute,
he proceeded: "It does not, however, follow that the
devise over is to take effect upon the death of either of the
devisees without issue as to her moiety, for the language
of the testator is 'if they shall die,' not if either of them·
shall die, 'then over to Mary and Charlotte.' " The
court reached a similar conclusion in construing similar
language in *Richardson* v. *Manning*, 12 Rich. Eq. (S. C.)
454, and *Cheney* v. *Teese*, 108 Ill. 473. In *Holmes* v.
*Maynel*, 25 Eng. Ruling Cases, 697, the language was:
"I give and devise all my lands in Meynel and Kirk
Langley in the county of Derby unto my two daughters
Elizabeth and Anne Meynel, and their heirs, equally to be
divided betwixt them; and in case they happen to die
without issue, then I give and devise all the said lands to
my nephew Francis Meynel, eldest son of my brother
William Meynel, deceased, and to the heirs male of his
body. . . ." Anne died without issue, and Francis
thereupon claimed a moiety of the remainder. The two
points presented to the court for decision were: First.
"What estate Elizabeth and Anne have by this will."
Second. Whether upon the death of Anne without issue
Francis in remainder takes anything. As to the second
proposition, the chief justice in rendering judgment said:
"I conceive Francis takes nothing upon the death of
Anne, but that her part remains to her sister by way of a
cross-remainder. (1) I take notice that the main design
and intent of the testator was that, in the first place, he
would take care of his own children, and then look after
the continuation of his own name and family; for first he
gives to his daughters, and afterwards the remainders to

his nephews, then to the next heir male of the name and family of the Meynels, following herein the law of nature, and the ordinary course of the world. That this was the intent appears by the words of the will: (1) In case (they) die without issue—i. e., both of them—it is not they or either of them. (2) All the said lands, which intends both parts, and not a moiety; and all cannot pass till both are dead without issue. And, if the testator had been asked what he meant by the lands going to his nephew after the death of his daughters without issue, he would have answered that he should have the lands when both of his daughters should be dead without issue, and not before."

In *Doe* v. *Webb*, 25 Eng. Ruling Cases, 702, the will was couched in similar language to that of the will construed in *Holmes* v *Meynel*, and the same conclusion was reached by the court. In 2 Blackstone, Comm. p. 381, it is stated that: "A devise of black acre to A. and white acre to B. in tail, and, if they both die without issue, then to C. in fee; here A. and B. have cross-remainders by implication, and, on the failure of either's issue, the other or his issue shall take the latter, and C.'s remainder over shall be postponed until the issue of both shall fail." And in Theobald on Wills (7 Ed.), 738: "If there is a devise of lands to two or more as tenants in common and the heirs of their bodies respectively, followed by a gift over in default of such issue, the gift over takes effect only in default of all of such issue as would take under the antecedent limitations, and therefore cross-remainders are implied between the tenants in tail."

A great many decisions are cited in the various briefs of counsel for appellant, but the cases upon which they seem most strongly to rely in this connection are *Nichols* v. *Denny*, 37 Miss. 59, *Hubbard* v. *Selser*, 44 Miss. 705, and *Davenport* v. *Collins*, 95 Miss. 358, 48 South. 733, and 96 Miss. 716, 51 South. 449. Neither *Nichols* v. *Denny* nor *Davenport* v. *Collins* are in point. In the

first-named the will under consideration simply be-
queathed certain personal property to joint lagetees; so
that no question as to the effect of a bequest over on their
death was before the court, and none such was adverted
to in its opinion. In the second the question before the
court was not when a devise over upon the death of the
first takers without issue takes effect, but, as stated by
the judge rendering the first opinion, was whether certain
parties "under the will take the fee simple title, or
whether they take as life tenants, with remainder to their
children."

In *Hubbard* v. *Selser* the language of the will was: "I
give and devise to my sons James M. Selser and Eugene
A. Selser, and to their lawful children after their deaths,
jointly the plantation whereon I am now residing." It
will be observed that in this will two elements contained in
the deed in *Hawkins* v. *Hawkins* and in the will in the case
at bar are lacking: First, the devise to J. M. and Eugene
A. Selser is not expressly for their lives; and, second, it
contains no devise over on their death without issue.
Moreover, the statute there construed did not create a
rule of construction as is done by section 2770 of our
present Code, which was the one construed in *Hawkins* v.
*Hawkins*, but simply abolished the right of survivorship
in joint estates. This statute, the one construed in
*Hubbard* v. *Selser*, is as follows: "If partition be not
made between joint tenants, the parts of those who die
first shall not accrue to the survivor, but shall descend, or
pass by devise and shall be subject to debts, charges,
courtesy or dower or transmissible to executors or admin-
istrators and be considered, to every other intent and
purpose in the same manner as if such deceased joint
tenants had been tenants in common.".

These cases are not in conflict, but, even if they were,
we would still conceive it to be our duty to follow the
Hawkins case; first, because it is supported by the later
cases of *Halsey* v. *Gee* and *Banking Co.* v. *Field*, and is in

line with the current of authority elsewhere; and, second, because since it was decided the statute therein construed had been re-enacted, and "the rule is that where a statute has been construed by the highest court of a state, and afterwards re-enacted in substantially the same terms, the legislature by such re-enactment adopts, along with the statute such construction." *White v. Illinois Cent. R. Co.*, 97 Miss. 91, 55 South. 593.

It is contended that the court in the Hawkins case would have arrived at a different conclusion had it taken into consideration section 2436 of the Code of 1892, 2765 of our present Code, which contains, among other things, our rule against perpetuities. In this counsel are in error, for as was said in the former opinion herein: "The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not like a rule of construction, a test, more or less artificial to determine intention. Its object is to defeat intention; therefore, every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied." Gray on the Rule against Perpetuities (2 Ed.), sec. 629. The case of *Gindrat* v. *Western Ry. of Alabama*, 96 Ala. 162, 11 South. 372, 19 L. R. A. 839, relied on in the former opinion, is in conflict with the current of authority and with our own cases hereinbefore cited.

Let us now again take up the will here under consideration, ascertain, if we can, what its dominant purpose with reference to this land is, and then construe the language dealing therewith in the light of this purpose and of these authorities.

It will not be necessary for us to decide whether Dr. Henry is a donee within the meaning of section 2765 of the Code or not; but it will be of some assistance in arriving at the dominant purpose of the will for us to remember that the direction to the executor, in event he should outlive the testatrix, to apply the income of her estate to his

support as long as he should live was not the main object of the will, but was a mere incident thereto. A will was wholly unnecessary in order to provide for Dr. Henry, for, had the testatrix died intestate, he would have inherited all of her estate. This direction to the executor was given simply to provide for a contingency which might arise. In the original will it is the last item save one, and is as follows: "Should my husband outlive me, then it is my will that my property shall be kept intact during his natural life; that is, the income from the same for his support and maintenance." The first devise contained in the will is to three acres of land to Mrs. Chappie C. Craig. Further on she is given a specific bequest of one thousand dollars and made the residuary legatee of the testatrix's personal estate. In the original will three specific devises of land were made, all of which were afterwards revoked, and all of the testatrix's real estate, except the specific devise made in the last codicil to Mrs. D. W. Henry and her children, was given to Ditto and Loraine Craig. To them she also bequeathed pieces of furniture, to which she evidently attached sentimental values, to wit, a table "formerly owned by President Jefferson Davis" and "the large mirror in the parlor." These are the only bequests of that character contained in the will except one of the family portraits, which were at first given to Mr. Yerger, but by the first codicil this bequest was revoked for the reason that the testatrix preferred "for these portraits to be kept in the family," and in the language of the will, were bequeathed "to Mrs. Annie McNeill, in trust, . . . to hold in her possession until Ditto Craig shall marry, and on that event, it is my will that said Mrs. McNeill shall give said portraits to the said Ditto Craig as a wedding gift in remembrance of me." In the original will specific devises and bequests are made to six of the nephews and nieces of Dr. J. P. Henry. One of these was Mrs. Craig, the mother of Ditto and Loraine, two of the others she was

unable to call by name, and referred to them as "Thomas Henry's sole daughter," and as "the sister of Dick Elliott," and the devises to two other of them, Asa, or Gus, and J. P. Henry, were afterwards revoked and the land so devised permitted to go to Ditto and Loraine. With the exception of three specific devises afterwards revoked, the testatrix in her original will devised all of her land to Ditto and Loraine and to the heirs of their bodies. No provision whatever was made therein by which it could ever come into the possession of these nephews and nieces of Dr. Henry. She seems to have taken no thought of them at that time in this connection. Certainly it cannot be said that they were then, in this connection, objects of her bounty. Whatever rights Ditto and Loraine had in the land were fixed by the terms of the original will, in which the testatrix evidently thought that she had fully disposed of the land in giving it to them and to the heirs of their bodies. It seems clear, therefore, that Ditto and Loraine Craig were the principal objects of the testatrix's bounty, and that her dominant purpose was to provide for them; that in her original will she meant to and did give the land to them as long as either of them should live, and, upon the death of both, to the heirs of their bodies; that afterwards, in order to provide for a contingency which might arise, to wit, the death of both Ditto and Loraine without issue, she provided that in that event, but not until then, the land should go to the nephews and nieces of Dr. J. P. Henry.

In the Hawkins case the court held that, upon the death of one of the life tenants, her interest in the estate passed to her heirs at law, who would hold it as such until the death of all the life tenants, when the ulterior limitation would take effect. In the case at bar the court held that a cross-remainder should be implied between Ditto and Loraine, by virtue of which Loraine, upon the death of Ditto, became possessed of the whole estate devised to both. In the first case the instrument construed was a

deed, while the instrument here is a will; and it may be that the court below was correct in not following the Hawkins case in this particular, for cross-remainders are never implied in a deed. As to this, however, we are not called upon to express an opinion, for the reason that Raymond Craig is the only person who can complain thereof, and he has not assigned error.

Appellants contend, however, that, if the will is to be thus construed, the devise will be to a succession of three donees, with a limitation over upon the death of the third without issue, and therefore in violation of section 2765 of the Code, which provides that: "Any person may make a conveyance or a devise of lands to a succession of donees then living, not exceeding two, and to the heirs of the body of the remainderman, and, in default thereof, to the right heirs of the donor, in fee-simple." If this is true, the devise to the third donee cannot take effect; and appellants claim that the land, upon the death of the second donee, would revert to the heirs at law of the donor, and that they are now her heirs at law for the reason that they are heirs of her husband, Dr. Henry, who, as she left no children, became her sole heir under the statute. According to the contention of appellees, the three donees of the one-half interest in the property here involved, under this construction of the will, are, first, Dr. Henry; second, Ditto; and third, if a cross-remainder is to be implied, Loraine; or, if *Hawkins* v. *Hawkins* controls, Raymond and Loraine. The devise to Ditto and Loraine is, in effect, a devise to each of them, not for the life of the devisee alone, but for the life of the one who should be the longest liver. *Hawkins* v. *Hawkins, supra.* The lives of both Ditto and Loraine, therefore, are not to be counted in the succession of donees, but only that of Loraine, who turned out to be the longest liver. Had the testatrix devised this land in express terms to Ditto for the life of Loraine there could be no question but that Loraine only should

be counted in the succession of donees; and, as events have determined, that, in effect, is what she did. This being true, it becomes unnecessary for us to decide whether or not the life of Dr. Henry must be counted, in the succession of donees, for the reason that, if his life must be so counted, the succession will not be for more than two lives, to wit, that of Dr. Henry and of Loraine.

The conclusion which we have reached also renders it unnecessary for us to decide whether or not appellants are the right heirs of Mrs. Henry. This question can only be properly determined after the death of Loraine, in a litigation to which are parties the persons who would then be entitled to the property in event appellants are not such heirs, and it will not be material then unless the life of Dr. Henry must be counted in the succession of donees.

The suggestion of error is sustained, the judgment heretofore rendered is set aside, and the decree of the court below affirmed.

*Affirmed.*

COOK, J. (specially concurring).

I am satisfied that the testator did not intend to devise to Dr. Henry any interest or estate in the lands. She merely created a charge upon the income for his support. Ample authority for this declaration is cited in the briefs of counsel.

It is clear to me, without considering the conflicting and confusing discussions of the courts, but after carefully reading the will, that the devise to Loraine and Ditto Craig for their lives means for the lives of both. This is the natural, and to me necessary, meaning of the words used by the testator. This construction, it seems to me, discovers the intent of the testator, and gives effect to every part of the will. There is by this construction no violation of the two donee statute. Loraine and Ditto Craig take the life estate and the nephews and nieces of Dr. Henry get the fee, should both Loraine and Ditto die

without issue. Was this not the plain purpose of the testator? To my mind there can be no question about it. As I read the will, the testator intended to, and no doubt thought she had, devised her entire estate by the will as first written. Later she discovered that if the life estate devised to Loraine and Ditto Craig should fall in, by both of them dying without issue, no provision had been made for this contingency, and then it was she added the codicil making the nephews and nieces of Dr. Henry the recipients of the ultimate fee.

I am unable to follow the line of reasoning by which the conclusion is reached that the nephews and nieces of Dr. Henry can, in any event, become the right heirs of the donee, nor can I conceive how the will—all of it—can be upheld by making. Dr. Henry a donee, for, if he is a donee, the devise of the ultimate fee to the nephews and nieces of Dr. Henry must fail.