CARTER, GUARDIAN, et al. *v.* BERRY, et al.

No. 42019 January 8, 1962 136 So. 2d 871

*O. B. Triplett, Jr.,* Forest, for appellant, Haskell T. Carter, guardian ad litem.

326

*John H. Holloman, John H. Holloman, III, William J. Threadgill, Dewitt T. Hicks, Jr.,* Columbus, for appellants, Executors and Trustees under the will of Russell B. Johnston, deceased.

*Sams & Sams,* Columbus; *Fitzhugh, Clay & Hodges,* Memphis, Tenn., for appellees, Lounora Johnston Berry and Jerryldine Johnston Ferguson, in reply to brief of guardian ad litem.

*Sams & Sams,* Columbus; *Fitzhugh, Clay & Hodges,* Memphis, Tenn., for appellees, Lounora Johnston Berry and Jerryldine Johnston Ferguson, in reply to brief of the executors and trustees.

*Sams & Sams,* Columbus; *Fitzhugh, Clay & Hodges,* Memphis, Tenn., for appellees and cross-appellants, Lounora Johnston Berry and Jerryldine Johnston Ferguson.

330

*Sams & Sams,* Columbus, *Fitzhugh, Clay & Hodges,* Memphis, Tenn., on Suggestion of Error.

RESPONSE TO SUGGESTION OF ERROR.

REPLY TO RESPONSE TO SUGGESTION OF ERROR.

Lᴇᴇ, P. J.

This litigation involved a construction of the last will and testament of Russell B. Johnston, deceased. It de-

veloped, under the pleadings, into a controversy, be-
tween the two daughters of the testator, namely, Mrs.
Lounora Johnston Berry and Mrs. Jerryldine Johnston
Ferguson, on the one hand, and the grandchildren of the
testator on the other. The guardian ad litem, for the
grandchildren, and the executors and trustees, under
the will, both contended that the will was legal and valid
in all respects and that the grandchildren are entitled
to the benefits and bequests which were provided for
them. On the contrary, the two daughters contended
that there was in fact no valid provision for the grand-
children; that no estates were vested in them; and that
any attempt toward that end was in violation of the
rule against perpetuities.

The learned chancellor, in his written opinion, held
that the will did not create a vested interest in the
grandchildren of the testator; but that, if an interest
was in fact created, it did not vest until the distribution
should occur and that this would not happen within the
time required by the rule against perpetuities. He there-
fore ordered and decreed that the trustees should man-
age and handle the assets of the estate in accordance
with the terms of the will and pay unto each of the two
daughters annually 30% of the net income from the
estate; but that until the death of the two sisters, name-
ly, Mrs. Vera Johnston Cooper and Mrs. Edra Mai
Johnston Bowling, the two daughters will not be entitled
to receive any of the corpus of the estate, with certain
exceptions not necessary to be mentioned. From the
decree entered, the guardian ad litem for the grandchil-
dren and the executors and trustees appealed, and the
daughters cross appealed.

Russell B. Johnston was a substantial citizen of
Lowndes County. He possessed large holdings of real
estate, with dominating interests in several corporations
and manufacturing enterprises, together with stocks,
cash, and other personal property. The two named

daughters were the sole offspring of his marriage. Along the way, domestic difficulties arose, and the wife, on October 9, 1950, was awarded separate maintenance, the custody of the daughters, Lounora and Jerryldine, born January 12, 1934, and December 17, 1936, respectively, and support both for herself and the children.

Prior to this estrangement and separation, the testator, on June 15, 1945, had set up irrevocable trusts in favor of his two daughters.

On December 22, 1950, Lounora married Charles E. Berry; and on January 19, 1955, the trust in her behalf terminated. Pursuant thereto a substantial amount of property was delivered to her, namely, $31,292.21 cash; 55 shares of stock in Johnston Furniture Mfg. Company; and 82½ shares of stock in Tombigbee Mill and Lumber Company. In February 1953, Jerryldine married Jimmy Ferguson; and, in December 1957, the trust in her behalf terminated. Pursuant thereto, a substantial amount of property was delivered to her, namely, $50,000 cash; 55 shares of stock in Johnston Furniture Mfg. Company; and 82½ shares of stock in Tombigbee Mill and Lumber Company. (The assets of the two trusts constituted more than 25% of the father's interest in the capital stock of the corporations and amounted to a substantial part of his principal worth.) The husbands of the two daughters, on the date of the testator's death, were gainfully employed.

On July 29, 1955, when he was 51 years of age, Johnston published and declared his last will and testament. His death occurred on August 11, 1958, when he was 54 years of age.

Three sons had been born to Mrs. Lounora Johnston Berry, to wit, Charles R. Berry, October 15, 1952; Thomas S. Berry, September 4, 1953; and Jerryald R. Berry, April 16, 1955. These children were of course grandsons of the decedent Johnston and were living both at the time of the execution of the will and at the time

of the testator's death. According to the record Mrs. Jerryldine Ferguson has borne no children.

In the will, the following named persons were recognized as beneficiaries or devisees: Mrs. Ruth Williams Johnston, the widow; Mrs. Vera Johnston Cooper, the testator's sister; Mrs. Edra Mai Johnston Bowling, the testator's other sister; and the testator's grandchildren. The testator gave his reasons in the will for the exclusion of Mrs. Lounora Johnston Berry and Mrs. Jerryldine Johnston Ferguson.

The widow renounced the will, as applicable to her. Her claim against the estate has been satisfactorily settled, and is not in controversy. Mrs. Vera Johnston Cooper, born April 7, 1900, is still living. Mrs. Edra Mai Johnston Bowling, born May 21, 1908, is still living, and has three children, one son and two daughters.

The pertinent provisions of the will, necessary for construction in this controversy, are set out as Parts 1, 2, 3 and 4 as follows:

### Part 1

"I hereby give, devise and bequeath all my property and estate whatsoever, both real, personal, mixed, and of every kind, character, nature and description whatsoever, and wheresoever located or situated, of which I may die seized and possessed, or over which or as to which I may have any right of testamentary control or disposition, or as to which I may in anywise be entitled to (all of same being hereinafter referred to as my ESTATE during the administration of my ESTATE by EXECUTORS and thereafter being referred to and being my TRUST ESTATE) unto T. E. LOTT and VERA JOHNSTON COOPER (nee Vera Johnston, my oldest sister), and to the survivor of them, as EXECUTORS of this my Last Will and Testament for and during the administration of my ESTATE, and thereafter unto T. E. LOTT, VERA JOHNSTON COOPER, JOHN ROBERTSON HENRY, J. EARL BISHOP and

HARVEY SEIFERT, and their respective successors, as TRUSTEES, all in TRUST as follows: * * *

### Part 2

"* * * After payment by my executors during the administration of my ESTATE and after payment by my trustees during the administration of my TRUST ESTATE, as the case may be, of the aforesaid items, the net income from my ESTATE and from my TRUST ESTATE, as the case may be, shall be paid over as follows:

"(a) Twenty percent (20%) of said net income shall be paid over to my sister VERA JOHNSTON COOPER for and during her lifetime;

(b) Twenty percent (20%) of said net income shall be paid over to my other sister EDRA MAI JOHNSTON BOWLING for and during her lifetime;

(c) Sixty percent (60%) of said net income shall be held and managed by my trustees as a part of the corpus of my TRUST ESTATE pursuant to and in accordance with the powers hereinafter given and granted to said Trustees.

3. My said Trustees shall hold, manage and deal with my said TRUST ESTATE, and any and all increases and increments thereof, in accordance with the powers, authorities and discretions herein granted, and in accordance with the terms and provisions hereof. Upon the death of my said sister, EDRA MAI JOHNSTON BOWLING, my EXECUTORS or TRUSTEES, as the case may be, shall transfer, deliver and pay over in fee simple unto the children of my said sister, EDRA MAI JOHNSTON BOWLING, living at the time of her death twenty (20) per cent of my said ESTATE or TRUST ESTATE, as the case may be, share and share alike. The remaining property and assets of my said TRUST ESTATE (80% of the amount on hand upon the death of my sister, EDRA MAI JOHNSTON

BOWLING) shall be held by my TRUSTEES in accordance with the terms and provisions hereof, and said TRUST ESTATE shall continue until, and shall terminate when, my youngest grandchild (whether now living or hereafter born) shall become twenty-five (25) years of age; provided, however, that in no event shall said TRUST ESTATE continue for a longer period than thirty-five (35) years from the date of this my Last Will and Testament. Upon the termination of said TRUST ESTATE, the entire TRUST ESTATE remaining on hand shall be transferred, delivered over, divided and distributed by my TRUSTEES to my said grandchildren, per capita.

### Part 3

"4. During the continuance of the trust herein created I hereby direct that my Trustees herein named, and all successor trustees, may expend such portions of the income and/or corpus of said TRUST ESTATE as they, in their sole discretion, determine to be reasonable for the support, maintenance and/or education of any of my said grandchildren, any and all amounts so paid out or expended by my said Trustees pursuant to the aforesaid provision to be charged against the account of the grandchild for whose use and benefit the same is expended, and said amount to be taken into account and deducted from said grandchild's share when final distribution is made of said TRUST ESTATE. I further direct that any and all amounts, if any, so paid out by my said Trustees pursuant to this provision may be paid by them to the mother of the grandchild or grandchildren for whose use and benefit the same is paid, and that a receipt from said mother shall be sufficient receipt for any such amount, or amounts, so paid out. I further direct that said mother shall not be required to make any accounting therefor either to my said Trustees or to said grandchild for whose use and benefit the same is received.

"5. I direct that neither the income from nor the principal of said TRUST ESTATE hereinabove created shall be liable for the debts, present or future, of any beneficiary thereof, and shall not be subject to the right on the part of any creditor of any beneficiary to seize or reach the same under any writ or by any proceeding at law or in equity; and no beneficiary shall have any power to give, grant, sell, convey, mortgage, pledge, or otherwise dispose of, encumber, or anticipate the income, or any installment thereof, or any share in the principal thereof, it being my will that no right of disposition of any such property shall vest in any beneficiary until the same shall have been actually transferred or paid over to said beneficiary. * * *

### Part 4

"I have made no provision herein for either of my two daughters, namely, Lounora Johnston Berry and Jeraldine Johnston Ferguson, for the reason that I have heretofore made, in my judgment, and after due consideration by me, adequate provision for them with TRUST AGREEMENTS," referring to the dates and book and page numbers where recorded.

In construing a will, the intention of the testator must control. That is the object of the construction — to ascertain the intention and give effect thereto. This must be done if possible. See cases listed in Volume 14, Miss. Digest, Wills, Sec. 439. This intention controls unless it is invalid under the law. Boxley v. Jackson, 191 Miss. 134, 2 So. 2d 160; Carter v. Sunray-Mid-Continent Oil Co., 231 Miss. 8, 94 So. 2d 624. If reasonably possible, the Court will so construe an ambiguous will as to render it not invalid under the rule against Perpetuities or the Two-Donee Statute. Bratton v. Graham, 146 Miss. 246, 111 So. 353. The case of Henry V. Henderson, 103 Miss. 48, 60 So. 33, recognized the fact that no two wills were ever written in precisely the same language throughout, or that two testators ever

died under precisely the same circumstances as to their estate, families or friends, and pointed out that technical rules of law and adjudicated cases are not of as great assistance in the construction of a will as they are in the construction of some instruments of a different character. Still the opinion pointed out that these rules and decisions are not to be disregarded altogether, but should be followed, unless to do so would do violence to the clear intent of the testator.

In McArthur v. Scott, 113 U. S. 340, 5 S. Ct. 652, 28 L. Ed. 1015, at page 1026 thereof, it was said by the Supreme Court of the United States: "For many reasons, not the least of which are that testators usually have in mind the actual enjoyment rather than the technical ownership of their property, and that sound policy as well as practical convenience requires that titles should be vested at the earliest period, it has long been a settled rule of construction in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event."

Thus it will be seen that, after the claim of the widow is ignored on account of her renunciation and settlement, and since there was a lack of provision for the daughters because of the testator's recitation in the will that he had already, by irrevocable trusts which had been fully discharged, made such provision as he desired for them, the executors were directed first to administer the estate, that is, pay all obligations, debts and taxes, due from the estate, and collect all claims and obligations due to the estate. The residue of the property of all kinds was then set up as a trust to be handled, managed, operated and even disposed of in whole or in part by the trustees, according to their judgment and discretion. The sole remaining objects and

beneficiaries of that trust became and were the two sisters and the grandchildren of the testator. Mrs. Vera Johnston Cooper, now 61 years of age, was to receive 20% of the net income from the trust fund during her lifetime. At her death, this 20% would be added to the 60% to be devoted to the grandchildren. Mrs. Edra Mai Johnston Bowling, now 53 years of age, was to receive 20% of the net income from the trust fund during her lifetime; and upon her death, 20% of the estate was to be transferred and delivered to her children, living at the time of her death, share and share alike. The testator directed the trustees to expend "such portions of the income and/or corpus" of his trust estate as they, in their discretion, should determine to be reasonable, for the support, maintenance and/or education of his grandchildren. A record of all benefits to each grandchild should be kept in order that deductions could be made when a final distribution of the estate was had. The will contained a spendthrift provision to prevent the sale, encumbrance or disposition by any grandchild until the trust terminated and the property was actually transferred. The trust of 80% of the net income and corpus, following the death of Mrs. Cooper and Mrs. Bowling, would terminate when the testator's youngest grandchild, whether living at the time of the execution of the will or born thereafter, should reach the age of 25 years; but the trust, in no event, should continue for a longer period than 35 years from the date of the will, namely, until July 29, 1990.

The appellees concede that, where the testator's intention is clear as to the time of vesting, this controls. But they contend that there was no vesting. They say that the "spendthrift" provision, the "discretionary" trust feature, the "divide and pay over" phase, and the "no right of disposition" until actual transferral provision — all negative and protest an intention to vest at the time of the testator's death. Besides, they

say that the contingencies are so insuperable that there can be no bar of the rule against perpetuities; and that, when the will is construed as if the rule did not exist, then such rule must be remorselessly applied, even though the application defeats the testator's intention.

The rule against perpetuities is the law limiting the time within which future interests can be created. Gray, The Rule Against Perpetuities, Fourth Edition, Sec. 4, p. 4. It is stated as follows: "No interest subject to a condition precedent is good, unless the condition must be fulfilled, if at all, within twenty-one years after some life in being at the creation of the interest." And also: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Sec. 201, p. 191, ibid. ██ █ But, a true vested interest is never obnoxious to that Rule, while a contingent interest not only may be, but often is, violative of the Rule. Sec. 99, p. 88, ibid. And again, "A vested interest is not subject to the Rule against Perpetuities." Sec. 205, p. 194, ibid. See also 70 C. J. S., Perpetuities, Sec. 10, p. 585.

In Nichols v. Day, 128 Miss. 756, 91 So. 451, the deed granted ten years in which to cut and remove the timber, with a perpetual right to an annual extension upon payment of 10% of the purchase price for each extension. The opinion, in upholding this provision and declaring that it was not in violation of the rule against perpetuities, cited the above-stated principles from Gray's Rule against Perpetuities as well as 1 Tiffany on Real Property (2nd Ed.), Sec. 183, and said: "From these statements of the rule it will be seen, and the courts hold, that it has no application to vested interests, but only to such interests as may not vest within the prescribed period of time."

The cases from this jurisdiction are helpful in some particulars, but they do not form a pattern by which the court can shape a true model for the answer to

this problem. In fact, in all of the cases, although there are similarities, there are also factual differences. Some of the cases from other jurisdictions have been found to be helpful.

For instance, in Endsley v. Hagey, 151 A. 799 (1930), from the Supreme Court of Pennsylvania, J. E. Hagey had died testate on April 8, 1920. By his will, he devised his entire estate, after the payment of debts and certain small legacies, to his wife and a named daughter for their natural lives. He directed that his entire net estate, other than certain exceptions, "should be held in trust, with the right of both to use all the income derived during their lifetime, or that of the survivor, with power to sell such part of the real estate as might be needed for their support. Any portion remaining, upon the death of both, was directed to be held in trust until the youngest grandchild reached his twenty-fifth year, when any then living should receive the corpus."

The opinion then stated: "The residuary estate not disposed of at the expiration of the life tenancy was directed to be held in trust until the youngest grandchild reached the age designated, when the proceeds were to be distributed. There was no postponement, however, of the vesting of the estate beyond a life or lives in being at the death of the testator and twenty-one years thereafter. The estate became fixed in the grandchildren immediately on the termination of the tenancy of the two granted life interests, * * *. This disposition did not violate the rule against perpetuities. The right to take the remainder did not depend upon the happening of some contingent event, but passed to persons definitely determined as to the death of the testator. The mere fact that the time of distribution was deferred, or that unborn grandchildren might share, does not alter this conclusion. * * * In the present case, the only grandchildren who could take would be the one (there was only one then) living at the time of testator's death, or

those born to the sole living daughter, a life tenant. Should any so come into existence, they would be entitled to share, but such a provision does not violate the rule, for the takers would be determined during the lifetime of the life tenants named. * * * The law favors vested estates, especially where descendants are being provided for * * * and if there were doubt here, which there is not, it should be resolved in favor of a vested estate. * * * In the present case, there was a vesting in the grandchild living, and such as might be born to the daughter during her lifetime.'' Thus it was held that a devise to life tenants, with remainder in trust until testator's youngest grandchild reached his twenty-fifth year, did not violate the rule against perpetuities.

Also in Hill v. Birmingham, 38 A. 2d 604 (1944) from the Supreme Court of Errors of Connecticut, Nicholas S. Hill, Jr. had executed his will in 1932 and died in 1936. He left surviving him his widow, the plaintiff Nicholas S. Hill III, his daughter, Mrs. Guthrie, and four grandchildren. In the fourth article of his will, the testator gave $50,000 to trustees with provisions that the income should be paid to his widow for her life and that, at her death, the principal should be paid ''into the trust fund established for the benefit of my grandchildren''. He also gave the residue of the estate to a bank and the testator's wife as trustees, directing that the income be paid to her for her life. He provided also that at her death the bank as surviving trustee should ''pay the principal of the above trust fund into a trust, in equal shares, per capita and not per stirpes, for the benefit of my grandchildren''; that the bank and the testator's daughter, Mrs. Guthrie, should be trustees of this fund; that the income should be paid to her to be used in equal shares ''for the benefit of my grandchildren as may in her judgment be deemed proper;'' and that the trustees or the surviving trustee should ''pay the principal of this trust fund to each of my

grandchildren, in equal proportion, when the youngest
of my grandchildren then living shall have reached the
age of twenty-five years,'' but that, if any of his grand-
children had died before that time leaving lawful issue
surviving, the share of the trust fund which would have
gone to that grandchild should be paid to the issue. The
opinion said: ''The gift to the testator's grandchildren
was a class gift. * * * It is not necessary for the solu-
tion of the problem before us to decide whether the
class closed when, at the death of the testator's widow,
the fund was to be paid into a trust for the grand-
children 'in equal shares.' No grandchild could be born
to the testator later than the time when the survivor of
his son and daughter died, with a possible addition of
nine months representing the period of gestation, and
consequently the class would necessarily close at that
time. The period limited by the rule against perpetuities
is a life or lives in being at the death of the testator and
twenty-one years thereafter, with an extension of nine
months, if necessary, to cover the period of gestation.
* * * Any interest which vested within the period
when grandchildren could be born to the testator would
not offend against the rule. This would necessarily be
so with reference to the right of grandchildren, though
born after the testator's death, to receive income from
the fund. While the grandchildren could not enjoy the
principal until the youngest became twenty-five years
of age, that would not postpone the vesting of the right
to receive it. * * * The rule against perpetuities is
concerned with the right to succeed to property; * * *
and the fact that, as in this case, the time when the
beneficiaries may come into enjoyment of it is beyond
the period fixed in the rule does not make the gift in-
valid. * * * The death of a grandchild before the time
to distribute the principal had arrived would, at most,
merely divest his interest, but it would not make the gift
to him invalid under the rule.''

The decree of the trial court was affirmed, the opinion saying: "The trial court correctly ruled that gifts to the grandchildren were not in any respect invalidated by the rule against perpetuities."

Likewise, in McKibben v. Pioneer Trust and Savings Bank, 6 N. E. 2d 619 (1937), from the Supreme Court of Illinois, where Katherine M. McKibben was a widow. Her only heir at law was a son, Thomas Stanley McKibben. In her will, she bequeathed only $1.00 to him, stating why she did that. By Item 15 of the will, after other directions and bequests of comparatively small amounts, she left the bulk of her estate, valued at about $100,000 "in trust" for the children of her son, share and share alike. The Pioneer Trust & Savings Bank was named as trustee. The provisions applicable to the trust were as follows: " 'b. The trust estate herein established shall continue until the youngest of said children living at the time of my death shall reach the age of thirty-five years, or if said youngest child shall die before reaching such age, at the date such child would have reached such age if he or she had lived.

" 'c. In the period from my death until the termination of said trust, the income from said trust estate shall be divided equally among such children as may be living, and paid to them in quarterly installments. Should any such child die during the period of said trust estate, leaving no children, the income shall be divided among the surviving children equally. The child or children of any deceased child shall succeed to the share of the parent, per stirpes and not per capita.

" 'd. When said trust is so terminated, the corpus thereof and any undistributed income shall be divided equally among such children of Thomas Stanley McKibben as may then be living, the children of any who may have died to take their parents share, per stirpes and not per capita.

" 'e. It is my intention and desire that such residue of my estate shall be kept intact in the hands of said trustee, or some other bank or corporate trustee, until the youngest child of my said son who may be living at the time of my death shall reach the age of thirty-five years; that during that period there may be an equal distribution among my grandchildren, including the children of any who may die; and that then there may be a similar distribution of the body of said trust."

By paragraph f, the trustee was given full power to rent, manage, control, sell and convey property as it deemed best. By paragraph g provision was made for suitable persons to receive shares of the income of the trust and disburse it for the benefit of the minors, it being provided that "such person or persons shall expend such income for the care, support and education of such minor or minors as he in his discretion may deem wise and expedient, and for the benefit of such minor."

The sole question in the case was whether or not Item 15 violated the rule against perpetuities.

In that case, just as in the present case, it was "contended by appellants that item 15 of the will, considered as a whole, creates a contingent remainder pursuant to which the equitable estate might possibly not vest until a period of time beyond a life or lives in being and twenty-one years and nine months thereafter, thus violating the rule against perpetuities, and that even if the equitable estate vested in the three living grandchildren upon the date of testatrix' death, it was an artificial and imperfect vesting, subject to partial divesting in the event of subsequent birth of other children who might not become invested with a share in the estate until a time beyond a life in being and twenty-one years and nine months thereafter." But the theory of appellees, sustained by the chancellor in that case, was "that the legal title to the property conveyed in trust by item

15 vested in the trustee at the death of testatrix, the equitable title then also vested in the three grandchildren, and as the entire interest in the estate became vested, the rule against perpetuities does not apply.''

The opinion said: ''The rule against perpetuities is in force in Illinois. As commonly stated, it is as follows: 'No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.' Gray, Rule Against Perpetuities, 1915, Ch. 6, p. 174. By its express terms, it applies only to contingent future interests and not to interests that are vested. The rule applies only to the beginning of the interest and is not involved in the postponement of its enjoyment. * * * The law favors the vesting of an interest. An estate will vest at the earliest possible time, and will be held to vest at the death of the testator unless some later time is clearly expressed in the will or appears by necessary implication. * * * In construing wills we have frequently held that each will must be considered on its own facts * * * and that the intention of the testator must be gathered from the entire will and not from any portion of it considered alone.''

The opinion said that by Item 15 *Mrs. McKibben "created a trust leaving her entire residuary estate to a bank as trustee, with provisions for the income therefrom and its ultimate distribution to be equally divided between the children of Thomas Stanley McKibben, her grandchildren. By paragraph a of item 15, the immediate legal estate vested in the trustee at the death of testatrix, and the immediate beneficial interest then also vested in Stanley's three children, share and share alike. Paragraph b fixed the period of the trust, using the life of the youngest child living at the death of testatrix merely to measure an exact period of time. Paragraph c provided the distribution of the income from the trust, and paragraph d directed the distribution upon its termina-*

*tion. These provisions show, beyond question, the im-
mediate vesting of the estate in trust for the benefit of
the grandchildren of testatrix. The period of the rule,*
being twenty-one years when not based on a life in
being, *has no application to a remainder which vested
upon the death of testatrix.* Here, under paragraphs b
and d, the testatrix merely used the period between the
age of Stanley's youngest child living at her death and
the date when he would become thirty-five, as the period
of the trust. *The time for distribution was fixed definite-
ly by the age of the youngest child living at her death,*
and at that instant could have been projected forward
to a definite calendar date.

*"The deferring of the enjoyment of the principal, for
reasons of the testatrix and not for reasons personal to
the legatee or devisee, does not prevent the immediate
vesting of the estate. * * * Where all the income goes
to those who will take on distribution, the estate is vest-
ed. * * * The opening up of the trust to let in afterborn
children, or to drop out a beneficiary who dies without
children, or to let in children of a deceased beneficiary,
does not make the trust contingent."* (Emphasis sup-
plied.)

The opinion said that the court previously had held
that "the rule against perpetuities had not been vio-
lated, because the gift to all the grandchildren, as a
class, immediately vested in them an equitable title in
the trust property, subject to opening up to let in those
after-born. * * * An estate now vested remains vested,
even though there may be a partial divesting later."

Consequently it was held that "The rule against per-
petuities does not apply to the provisions of the will of
Katherine M. McKibben, and the circuit court properly
so held."

In the case of Wurst v. Savings Deposit Bank &
Trust Co., et al., 47 N. E. 2d 676 (1940), from the Court
of Appeals of Ohio, the relief sought was the termina-

tion of a testamentary trust on the ground that it violated the rule against perpetuities. The testator, after providing for the administration of the estate and certain bequests, had devised the residue to the Savings Deposit Bank and Trust Company, with the net income to be paid to his wife, Ella J. Wurst, during her natural life in quarterly installments. Upon her decease, one-half of this net income should be paid in quarterly installments to his son Earl H. Wurst, during his natural life; and at his decease, this half should be divided into equal parts between the children of Earl that may survive him or have heirs until Earl's youngest child should arrive at the age of 30 years. At that time, the Trust Company should turn the one-half of the estate then remaining over to Earl's children. A like devise was made for Charles J. Wurst, another son, and his children, after the death of the mother Ella J. Ella J. Wurst predeceased the testator and he afterwards married Anna G. Wurst, who, upon his death, elected to take according to law and not under the provisions of the will.

The opinion pointed out the general rules of construction, and then quoted with approval the language of the trial court wherein it was said: " 'The trustee has the naked legal title for the uses and purposes stated in the will. Item 2 (paragraph second of Item 3rd) of the will deals with the rights and interests of Earl H. Wurst and his children. As to them the trustee holds the legal title until the youngest child of Earl Wurst becomes thirty years of age, at which time distribution is to be made.''

The trial judge had cited McArthur v. Scott, 113 U. S. 340, 5 S. Ct. 652, 28 L. Ed. 1015, and then said that, according to the holding in this case, "the children of Earl H. Wurst living at the death of the testator took equitable vested remainders, opening, if necessary, to let in those born after the testator's death, and subject

to be divested as to any of them as might be required by the terms of the will." Hence it was said that the provisions of the will of the testator there under consideration did not violate the rule against perpetuities.

The Pennsylvania, Connecticut, Illinois and Ohio cases, cited above, emphasize the principal that, if there is a vesting at the time of the testator's death, the rule against perpetuities has no application; and, under the factual situations in those cases, there was no violation of that rule. It was pointed out that the deferment of the time of distribution, after such vesting, would not defeat the devise; and also the withholding of the enjoyment would not postpone the vesting of the right to receive the benefit.

As the opinion in Henry v. Henderson, supra, pointed out, no two wills, if they depart from the laws of descent and distribution, were ever written in precisely the same language throughout because it would be rare indeed if two testators should die under precisely the same circumstances as to their estate, families or friends. And so it is here. In comparing the present case with the decided cases, there are similarities and dissimilarities. The elaborate and exhaustive briefs, filed by learned and experienced counsel on both sides, have been unable to find a situation of which the present case is a duplicate. This may not be impossible; but it is highly improbable that such a discovery could be made. The Court, in its research has not been able to find what might be termed the proverbial needle in the haystack.

But, taking the instrument by its four corners, and applying the rules of construction heretofore referred to, and bearing in mind that it is the duty of the Court to uphold it, if this can be reasonably done, the Court is definitely of the opinion that the interest of the grandchildren in the trust estate vested at the time of the testator's death. The 60% of the net income was to be held and managed by the trustees as a part of the

corpus of the trust estate in accordance with instructions given in Paragraphs 3 and 4 as shown in the will.

It is unlikely that Sir Walter Scott, if he were living today, would select, as the perfect exemplification of literary precision and exactitude, the language of the testator in reference to the expenditure of the income and corpus of the trust for the support, etc. of his grandchildren, as stated in Paragraph 4, Part 3 of the will, supra. But, from all of the circumstances, this necessarily means: ''I hereby direct that my Trustees * * * may expend such portions of the *income and/or corpus* of said Trust Estate as they, in their sole discretion, determine to be reasonable for the support, maintenance and/or education of my said grandchildren * * *''. (Emphasis supplied.) So great was the testator's concern for the support, maintenance and education of his grandchildren that both the income and the corpus itself were dedicated to that purpose. It is true that the reasonableness of the amount of such expenditures was left to the discretion of the trustees, but the imposition of the duty to make them was positive and mandatory. A chancery court would no doubt remedy an abuse of that discretion. A careful study of the whole will reflects the supreme confidence which the testator evinced in the business judgment, ability and integrity of those to whom he entrusted the performance of the trust both as to the management and operation of his businesses and the welfare of his grandchildren. But he did not leave even to them the discretion as to whether or not the income and the corpus might be used for the purposes stated — he enjoined it upon them to do it, leaving it to them to determine the reasonableness of the amounts for that purpose. This was unmistakeable evidence of an actual vesting of both the income and the corpus.

Moreover, immediately following the positive direction as to the income and/or corpus, the testator pro-

vided that "any and all amounts so paid out or expended by my said Trustees pursuant to the aforesaid provision to be charged against the account of the grandchild for whose use and benefit the same is expended, and said amount to be taken into account and deducted from said *grandchild's share* when final distribution is made of said Trust Estate." (Emphasis supplied.) The testator was thereby saying that each grandchild already had a share; and each one, in the final distribution, would get his share less the amount which had already been spent in his interest for the authorized benefits. The Court therefore holds that not only did the testator intend to vest the specified estate in his grandchildren as a class, but that he actually did so.

Since the Court is confirmed in the rightness of the result which it has reached, there does not devolve upon it the duty to strike down and wholly defeat the dominant will of the testator, take from the grandchildren the estate which was dedicated to and vested in them, and award it to others whom he had seen fit to exclude.

The appellees argue that the provision of the so-called "spendthrift" trust, as found in the will, negatives the idea that there was a vesting of an estate in the grandchildren. Among the cases which they cite are Mitchell v. Choctaw Bank, 107 Miss. 314, 65 So. 278; Calhoun v. Markow, 168 Miss. 556, 151 So. 547; West Tennesee Company v. Townes, 52 F. 2d 764. The first two cases involved efforts on the part of alleged creditors to subject property of adversary parties held for them as trusts under the terms of so-called "spendthrift" trusts. The third was a suit by the vendee of the purchaser at a foreclosure sale and would properly fall into the same category. That question is not before the Court. This is not a suit by a creditor to subject the income or corpus of this trust to the debts or obligations of the grandchildren. Such an action may never arise.

The appellees also argue at length about various possibilities and contingencies in connection with what may happen to the living grandchildren, and the outcome in the event of the birth of others, and the uncertainty in the determination of such devisees.

As heretofore stated, the testator had three grandchildren at the time of the execution of the will. Those children were still living when he died, but no others have been born. It is clear, from what has already been said, that the Court is holding that there was a vesting of this specified estate in those grandchildren at the time of the testator's death. In other words, the gift was to a class. At that time, it consisted of those then living. Any further observations on this question are wholly unnecessary although the decisions of this Court seem to indicate clearly that this jurisdiction is committed to the principle that, when the devise is to a class, it vests, upon the death of the testator, in those members then in being, subject to be opened up and ''let in members of such class who may afterwards come into existence before the date fixed for the ascertainment of the members of the class.'' Branton v. Buckley, 99 Miss. 116, 54 So. 850; Allen v. Allen, 145 Miss. 368, 110 So. 685.

No construction was sought insofar as the devises to Mrs. Cooper and Mrs. Bowling are concerned. Presumably all parties were satisfied of their validity.

From what has been said, it is obvious that the Court is of the opinion that the learned chancellor was manifestly wrong in holding that no estate was vested by the testator, at the time of his death, in the grandchildren, but that such trust, as was created, was violative of the rule against perpetuities. Consequently, the decree so providing and invalidating the devise to the grandchildren is reversed, and a decree will be entered here for the appellants sustaining and upholding the validity of the devise.

In view of the Court's conclusion that the devise to the grandchildren is valid, and that the two daughters of the testator, under the will, are not entitled to anything, it follows that the appeal of the daughters, whether it is denominated direct or cross, must fail in its entirety.

Reversed and decree here for appellants.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.

## ON SUGGESTION OF ERROR

ETHRIDGE, J.

After appellees (the two daughters) filed their brief on suggestion of error, the Court's request for a reply by appellants (the guardian ad litem for the grandchildren, the executors, and trustees) was complied with, to which appellees submitted a rebuttal brief. Sup. Ct. Rule 14(3). The issues have been briefed and considered *en banc* by the Court, with the present briefs putting more emphasis on the first point hereinafter discussed than was done on original submission. Carter v. Berry, 136 So. 2d 871 (Miss. 1962).

The questions are: (1) Is the gift contingent, or finally vested in a closed class at the end of lives in being (the daughters)? (2) Does the all-or-nothing rule of Leake v. Robinson, *infra,* concerning class gifts, some of which might possibly vest beyond the period of perpetuities, pertain to this testamentary trust? (3) If it does, is the all-or-nothing rule sound and should it be applied here? (4) If not, we must determine and apply a rule of law which is in accord and consistent with the purposes and policy of the rule against perpetuities, the dominant intent of the testator, and a logical and fair interpretation of the will.

In essence, Johnston's will left eighty per cent of his estate (after the death of his sister, Mrs. Cooper) to trustees. The trust was to continue as an active trust,

and terminate "when my youngest grandchild (whether now living or hereafter born) shall become 25 years of age; provided, however, that in no event shall said trust estate continue for a longer period than 35 years from the date of this" will. Upon termination of the trust, the trust estate remaining shall be "transferred, delivered over, divided and distributed by my trustees to my said grandchildren per capita."

The trustees were given power to expend such portion of income or corpus as they in their sole discretion determined to be reasonable for support, maintenance and education of the grandchildren. Such expenditures were to be charged against the account of the particular grandchild and deducted from his share when final distribution was made. A spendthrift provision provided the trust fund was not liable for debts of any beneficiary, and no beneficiary had the power to convey, mortgage or anticipate the income or any share in the corpus, "it being my will that no right of disposition of any such property shall vest in any beneficiary until the same shall have been actually transferred or paid over to said beneficiary." The will stated that no provision was made for Johnston's two daughters, because he had previously made adequate provision for them.

The will was executed in 1955, so the maximum period of the trust estate would terminate in thirty-five years, in 1990. At his death testator left surviving him two children, daughters: Mrs. Lounora J. Berry, then twenty-four years of age, with three children (testator's grandchildren), then approximately six, five, and three years of age, respectively. The other daughter, Mrs. Jerryldine J. Ferguson, then twenty-two years of age, is also married but has no children.

Appellees contend, and the chancery court held, that this testamentary devise, bequest and trust violates the rule against perpetuities. The classic statement of the rule, accepted by most of the courts, is that form-

ulated by Gray: No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest. Gray, The Rule Against Perpetuities (4th Ed. 1942), Sec. 201; McCormack v. Blanks, 226 Miss. 767, 85 So. 2d 204 (1956); Comment, 28 Miss. L. J. 88 (1956). The rule against perpetuities is a rule invalidating interests which vest too remotely. It is not a rule against suspension of the power of alienation of property through the creation of interests in unborn or unascertained persons. ██ █ It is not satisfied by the fact that there are persons in being who can together give a complete title to a purchaser. However, both principles stem from the general policy against withdrawal of property from commerce. Leach and Tudor, The Rule Against Perpetuities (1957), Sec. 24.3. ██ █ In other words, an interest violating the rule against perpetuities fails because it vests too remotely; it may be, and usually is, freely alienable at all times. We are not concerned here with the "succession of donees" statute. Miss. Code 1942, Rec., Sec. 838; see Custy and Brand, Future Interests—The Mississippi Two Donee Statute and the Common Law Rule Against Perpetuities, 30 Miss. L. J. 221 (1959).

In our original opinion, we held that the intention of the testator should control if reasonably possible, and an ambiguous will would be construed so that it would not be invalid under the rule against perpetuities. A vested interest is not obnoxious to the rule, and the interests of the three grandchildren living at testator's death vested in them. The gift was to a class, which at that time consisted of those then living. The court pretermitted any decision on participation in the class by grandchildren of testator born after his death, but incidentally in a dictum observed that, in gifts of a life estate with remainder to a class, the remainder vests in those members of the class in being at testator's

death, subject to being opened up for additional members before the date fixed for final ascertainment of membership.

## I.

In support of the trial court's decree, appellees rely upon the all-or-nothing rule in class gifts. The source of the doctrine is the leading English case of Leake v. Robinson, 2 Meriv. 363, 35 Eng. Rep. 979 (1817). It involved a devise in trust to testator's grandson, W. R. R., for life, and after his death to his children who should attain twenty-five; and if W. R. R. die without issue, or the issue die before attaining twenty-five, to pay to the brothers and sisters of W. R. R. who should attain twenty-five. He died without leaving issue, but left eight brothers and sisters surviving him, three of whom were born after the testator's death. The court held that testator intended to include all the brothers and sisters living at the time of W. R. R.'s death, and not simply those living at testator's death; that the gift was not vested until the donees attained twenty-five, since the only gift was in the direction to pay; and consequently the whole gift was void for remoteness. It was argued the gift could be split and upheld as to those of testator's grandchildren who were living at his death, though void as to those born afterwards; but the court refused to so hold, saying the question was of a gift to a class and not a bequest to individuals.

In brief, the English rule is that, if the interest of one class member can possibly vest too remotely, the entire class gift must fail. The court in Leake v. Robinson felt that it was bound by Jee v. Audley, 1 Cox Ch. 324 (1787), in which apparently the point was not raised by counsel and was not discussed by the court. Invalidity was assumed. Seven years later Routledge v. Dorril, 2 Ves. Jur. 357 (Ch. 1794), followed Jee v. Audley, and struck down the entire class gift, although the question was recognized as being one of "construc-

tion". There then followed Leake v. Robinson. The subsequent history of that rule in England "can be described in two words: stare decisis." Professor W. Barton Leach has analyzed the entire doctrine in a comprehensive and perceptive manner. Leach, The Rule Against Perpetuities and Gifts to Classes, 51 Harv. L. Rev. 1329 (1938). The approximately ten American courts which have considered the class gift doctrine have followed the English cases beginning with Leake v. Robinson. 6 American Law of Property (1952), Sec. 24.26.

Whether we should follow the rule of Leake v. Robinson is a *de novo,* open question in this jurisdiction. The only Mississippi case referring to it is Caldwell v. Willis, 57 Miss. 555 (1880). Caldwell is not in point and, moreover, was incorrectly decided. Testator made a bequest to his son, Daniel Willis, during his life, and after his death "to his child or children then living and the descendents of such child or children and their heirs forever." The court concluded the gift was to all descendants to the remotest generations as a class, and held it was void. On that assumption, the limitation over was too remote. The court then reached what Gray calls "the extraordinary result that A (Daniel Willis) took an absolute interest." Apparently this was based on a misinterpretation of a statement in Harris v. Mc-Laran, 30 Miss. 533, 570 (1855). See Gray, The Rule Against Perpetuities (4th ed. 1942), Secs. 398, 249. Testator clearly intended to leave a remainder to the life tenant's children living at his death. The construction of an intent to make the gift to descendents to the remotest generations as a class was impossible to carry out, but, when reached, the gift was manifestly void. Nor was there any basis for vesting the entire estate in the life tenant. The unwarranted construction of this class gift resulted in an unnecessary and *obiter* reference to Leake v. Robinson.

In sum, the all-or-nothing rule, first adopted in Leake v. Robinson, is to this effect: A gift of property "to be divided among a class of persons was totally invalid if it was possible that the interest of any member of the class would vest beyond the period of perpetuities. Or, to put it differently, a class gift is not 'vested' *in any member* within the meaning of that word as used in the Rule against Perpetuities until the interests *of all members* have vested." Leach and Tudor, The Rule against Perpetuities (1957), Sec. 24.26. This unique application of the rule against perpetuities to class gifts requires, first, that a class gift must stand or fall as a unit, and cannot be split; and second, both the maximum and minimum membership in the class must be determined within the period of the rule. The class gift must be certain to vest within lives in being and twenty-one years, and it must be certain also to close within that time. Simes and Smith, The Law of Future Interests, (1956), Sec. 1265. See also Phillips, Some Suggestions to Wills Draftsmen: Complex Dispositive Plans in General, Class Gift Provisions in Particular, 40 N. C. L. Rev. 23 (1961); 41 Am. Jur., Perpetuities and Restraints on Alienation, Sec. 52; 70 C. J. S., Perpetuities, Sec. 17; Anno., 56 A. L. R. 2d 450 (1957); Anno., 155 A. L. R. 698 (1945).

If we should apply the all-or-nothing rule to the trust created by Johnston's will, the result would be invalidation of the entire gift to testator's grandchildren, and inheritance of the estate by his daughters for whom he had already provided, and whose participation in his estate he expressly excluded because of earlier provisions for them. The dominant idea of the entire will is that testator's grandchildren shall have the bulk of his estate. His determination that his daughters shall not have it is manifest.

██ ██ We think the measuring lives in being are the lives of testator's daughters, Mrs. Berry and Mrs. Ferguson. The period within which interests must vest, if

they are to be valid, is twenty-one years after any reasonable number of lives in being at the creation of the interest. If testator had said "when my youngest grandchild (whether now living or hereafter born) shall become *twenty-one* years of age", instead of "shall become twenty-five years of age", the validity of the devise would be clear. All grandchildren must be born in the lives of the testator's own children, and these must perforce he lives in being at testator's death. Both the maximum and minimum membership of the class would then be determined within the period of the rule.

■■ The lives in being which are the measure of the period must be indicated by the creating instrument, but they need not be mentioned in it. The testator need not intend the particular lives in question to be the measure for purposes of the rule, but, if it is necessarily inferable from the instrument that all future interests will vest within the period of lives in being at the creation of the interests, the rule is complied with. Simes and Smith, The Law of Future Interests, Sec. 1223.

■■ The lives used as a measure of the period need not be those of persons who take anything under the instrument. Thellusson v. Woodford, 11 Ves. 112, 32 Eng. Rep. 1030 (1805). They need not be holders of previous estates, and need not be connected in any way with the property or the persons designated to take it. Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638, 641 (1938); Leach and Tudor, The Rule Against Perpetuities (1957), Sec. 24.13.

In the instant case, the lives in being in the will are those of Johnston's two daughters. Their issue determine the identity of his grandchildren.

The chancellor erroneously found that the gift was for a period in gross, twenty-one years, without any precedent lives in being. Our original opinion did not develop this point, but apparently assumed only a period in gross. However, our conclusion, stated above, is that

the lives in being are those of testator's daughters. In that view, the devise to his grandchildren as a class is good if the *vesting* is not postponed to a time after they become of age, for they must all become of age within twenty-one years after the death of their parents (testator's daughters), and the parents must all have been born or begotten in testator's lifetime.

Was the gift vested or contingent? The power given the trustees to make payments to the grandchildren before final distribution is a strong circumstance pointing toward vesting. If the final gift is contingent, no account could be taken of these payments, although the will expressly provides that each child's share should be charged therewith. Moreover, the absence of any provision for limitation over upon the contingency of death of a beneficiary before time for final distribution raises an inference of intent to vest at testator's death and finally at end of the lives in being. Coddington v. Stone, 217 N. C. 714, 9 S. E. 2d 420, 422-423 (1940).

On the other hand, the gift to the grandchildren is a gift to pay and distribute when the youngest reaches twenty-five. And this makes the gift prima facie contingent. Johnston had wishes which are really inconsistent, and the wishes for vesting, it might be argued, are less weighty than the stated intention of a postponed vesting.

■■ However, considering the will as an entirety, we hold that the vesting in the grandchildren occurred within the period of the rule against perpetuities. No grandchild could be born to testator later than the time when the survivor of his two daughters died (with the possible addition of a nine month's gestation period), and therefore the class would necessarily close at that time, at the end of lives in being. The twenty-five years refers to the time of distribution, not to vesting. The estates in the grandchildren living at the testator's death vested in them subject to be reopened within the period

of lives in being, that of testator's daughters. The share of a grandchild who dies, whether or not the youngest has attained the age of twenty-five or the thirty-five year period has expired, would pass to his heirs. If a grandchild dies before the time of distribution, his heirs inherit his share. Paragraph three of the will states that distribution shall be made "to my said grandchildren, *per capita*". By this testator purposed that each grandchild should receive an equal share, and, as stated, the interest of the grandchild would become vested in him upon his birth. This construction is consistent with the rule against perpetuities and effectuates, we think, the testator's intention. He did not say that grandchildren should receive a share when and if they lived until the youngest attained the age of twenty-five years. The distribution was to be made at that time, but the class would necessarily close during lives in being, those of the daughters of testator.

## II.

Nevertheless, the rule of Leake v. Robinson tends to deny a vesting under these circumstances. The will provided for distribution upon one of two events, testator's youngest grandchild reaching the age of twenty-five years, or thirty-five years after the date of the will, which would be 1990. Until the event happens, it may be impossible to state which of them will be controlling. The daughters could have children up until the time of their deaths. Some of the children could die, and others live. Under the class gift rule, there is a possibility that the daughters may live beyond their deaths. Some of the children could die, and others live. Under the class gift rule, there is a possibility that the daughters may live beyond 1990, and then have children. These hypothetical contingencies, the latter of which is certainly not reasonable or probable, would under the Leake rule make the gift contingent, since all of the participants in the class could not finally be determined. Parker v.

Parker, 252 N. C. 399, 113 S. E. 2d 899 (1960); Burruss v. Baldwin, 199 Va. 883, 103 S. E. 2d 249 (1958); Gwin v. Hutton, 100 Miss. 320, 56 So. 446 (1911); Kates v. Walker, 82 N. J. 157, 82 A. 301 (1912); Closset v. Burt-chaell, 112 Ore. 595, 230 P. 554 (1924); Thomas v. Pullman Trust and Savings Bank, 371 Ill. 577, 21 N. E. 2d 897 (1939). The will contains several factors indicating an intention to postpone vesting until the time of distribution. Among them is the provision that income and corpus, if necessary, are first to be applied to the bequest to the widow. In the trial court, but not here, counsel for the executors admitted that, because of the provisions for distribution, "it would be necessary for a grandchild to survive the termination of the trust estate in order to share in such distribution." Further, Edgerly v. Barker, 66 N. H. 434, 31 A. 900 (1891), 28 L. R. A. 328, held, under substantially similar facts, that the gift was contingent. Gray, Sec. 863.

Johnston's inconsistent wishes in this respect, as to the date of vesting, the extended application of the Leake v. Robinson rule by many courts in related situations, and the desirability of meeting this issue head-on under the inconsistent terms of this will and the authorities, have all persuaded us that it is necessary and proper to deal also with the issues in this case on a second basis, namely, that, under the rule of Leake v. Robinson, the gift is contingent. On both foundations, we hold the gift to the grandchildren is valid.

The question is whether, as a *de novo* proposition in this jurisdiction, we should follow Leake v. Robinson and its successors from other jurisdictions, or adopt a different rule. In the immense literature of primary and secondary authorities discussing and frequently applying that case, we have found no satisfactory rationalization for it. Sir William Grant stated that to permit some members of the class to take when others cannot is to "make a new will for the testator". The American

Law Institute says that the ascertained members of the class do not constitute its intended full membership; and the size of the shares of the ascertained members remains unfixed. It concludes: "The plan of my conveyor would normally be emasculated by sustaining part only of the class gift." 4 A. L. I., Restatement, Property (1944), Sec. 371, Comment a. The American cases applying Leake v. Robinson have not attempted an explanation or rationale for the rule, and rely upon it simply as settled doctrine. 6 American Law of Property, Sec. 24.26.

■■ Whether testator's plan would be emasculated by sustaining a part only of the class gift, or by reducing the age contingency, here twenty-five, to twenty-one, should become a question of fact in each particular case. Infectious invalidity is not a universal doctrine, as will be hereinafter noted. Where part of the testator's plan is valid and part invalid, the normal procedure is to examine the total plan of testator, and determine whether that part which is invalid is so integral to the total plan that it can be inferred testator would have preferred all to fail, rather than to have the valid part stand alone. If the valid part actually accomplishes most of testator's desires, then that portion should stand. The all-or-nothing rule ignores the proposition that the problem is one of separability, not of perpetuities; a question of construction, not of application of a rule of law. There is no reason to totally amputate an arm in order to save an infected finger. The general dispositive intent should control. ■■ The court should save such parts of the gift as the rigid requirements of the rule do not strike down, provided such action carries out the testator's principal purpose. This approach will preserve the policy of the rule, and at the same time preserve so far as may be the intention of testator.

All of the scholars in this field criticize the doctrine of Leake v. Robinson and its indiscriminate application.

6 American Law of Property, Sec. 24.26. Simes and Smith say there is no rational basis for it. Simes and Smith, Sec. 1265. Leach has demonstrated that in his pioneering reexaminations of the doctrine. Leach, Perpetuities in a Nutshell, 51 Harv. L. Rev. 638 (1938); Leach, The Rule Against Perpetuities and Gifts to Classes, 51 Harv. L. Rev. 1329 (1938); Leach and Tudor, The Rule Against Perpetuities (1957), Secs. 24.26-24.29; Leach, Perpetuities in Perspective: Ending the Rule's Reign of Terror, 65 Harv. L. Rev. 721 (1952); Leach, Perpetuities Legislation, Massachusetts Style, 67 Harv. L. Rev. 1349 (1954); Leach, Perpetuities Reform by Legislation: England, 70 Harv. L. Rev. 1411 (1957); Leach, Perpetuities: New Absurdity, Judicial and Statutory Correctives, 73 Harv. L. Rev. 1318 (1960); Leach and Logan, Perpetuities: A Standard Saving Clause to Avoid Violations of the Rule, 74 Harv. L. Rev. 1141 (1961). See also Lynn, Reforming the Common Law Rule Against Perpetuities, 28 Univ. Chi. L. Rev., 488 (1961); Simes, Is the Rule Against Perpetuities Doomed? 52 Mich. L. Rev. 179 (1953). Gray concedes that there is no rational basis for the rule, and "Leach's arguments are difficult to meet except upon the ground of authority." Gray, pp. 396-397, fn. 4.

Moreover, the courts applying the class gift doctrine have established at least two "exceptions" to it. Where there is a gift of a stated sum to each person described by a class designation (as distinguished from a gift of a fund to be divided among the class), some members may take their gifts though the gifts to others are void. Gifts of specific sums to a class can be part good and part bad. Storrs v. Benbow, 2 M. & K. 46, 39 Eng. Rep. 862 (1833), 3 De G. M. and G. 390, 43 Eng. Rep. 153 (1853); 4 Restatement, Property (1942), Sec. 385; Gray, Sec. 389; Simes and Smith, Sec. 1266; Leach and Tudor, Sec. 24.28.

· Also, under the rule of Cattlin v. Brown, where there is a gift to a class of classes, some may take though others fail. 11 Hare 372, 377, 1 Eq. 550, 68 Eng. Rep. 1319 (1853); Gray, Secs. 391, 392; Simes and Smith, Sec. 1267; 4 Restatement, Property (1944), Sec. 389; Leach and Tudor, Sec. 24.29.

Another conflicting line of authority is illustrated by Brattle Square Church v. Grant, 3 Gray 142 (Mass. 1855), which held that the invalidity of a divesting gift leaves the vested gift absolute and does not defeat it. When a condition subsequent or a limitation is void by reason of its being impossible, repugnant or contrary to law, the estate becomes vested in the first taker, discharged of the condition or limitation over, according to the terms in which it was granted or devised. See Leach, 51 Harv. L. Rev. 1329, 1335-1336, 1352; Anno., 56 A. L. R. 2d 450 (1957).

These three lines of authority are well settled and appear to us to be sound. They establish a conflict of principle with the doctrine of Leake v. Robinson, and are in substance authorities opposed to that case. We think the principles applied in them have a rational and reasonable basis, which is wholly lacking in Leake v. Robinson. They are consistent with the traditional approach by this and other courts toward effectuating the dominant intent of a testator, insofar as that may be done. The all-or-nothing rule fails to recognize that the court is dealing with a situation in which there is a valid vested interest subject to partial divestment by an invalid gift.

 ██ The common law should be but is not always a product of rational processes and growth. This question is new in this jurisdiction. We decline to adopt the patent anomaly and ill-considered doctrine of Leake v. Robinson and its successors. It is not good logic or sound law.

## III.

■■ ■ What is the essence of the problem? It is two-fold: To construe this devise to carry out the dominant purpose of the testator, if possible, and to preserve the purpose of the rule against perpetuities by invalidating only those interests which vest too remotely. There seems to be no reason, under the policy of the rule against perpetuities, why a gift in a will such as this should not be cut down to size. The following applies to the second basis of this decision, on the assumption that, under the all-or-nothing rule, the gift is contingent.

In most perpetuity cases, gifts fail, if at all, (a) because the gift is contingent upon a person's reaching an age in excess of twenty-one, and (b) because the gift includes persons unborn at the creation of the interest (as Johnston's will expressly provided.) There are two alternative, available answers.

■■ ■ First, the Court could hold that the gift was valid as to the donees living at the time of the creation of the interest, here the three then-living grandchildren, and could eliminate unborn children. Whether the entire gift should fail is a question of fact in each particular case. It should be determined whether the total plan of testator and the portion which is invalid are so integral and related to one another that it can be inferred that testator would have preferred all to fail, rather than to have the valid part stand alone. Certainly the problem is one of separability, not of perpetuities. It is a question of construction, not of application of a rule of law. 6 American Law of Property, Sec. 24.26; Leach and Tudor, Sec. 24.26; Leach, The Rule Against Perpetuities and Gifts to Classes, 51 Harv. L. Rev. 1329 (1938).

Although it may be suggested that one cannot split a contingency unless the testator or settlor has done so by the terms of the instrument, it nevertheless is a fact that courts do sometimes split contingencies when

different persons are involved. Simes and Smith, Sec. 1265. Moreover, this first alternative, holding the gift valid as to donees living at time of creation of the interest, is in accord and consistent with three lines of authority illustrated by the rules applied in Brattle Square Church v. Grant, Storrs v. Benbow, and Cattlin v. Brown.

Although this course might be proper in a case where it would effectuate substantially the dominant intent of testator, we decline to apply it here. The dominant idea of the whole will is that testator's grandchildren, whether living at the time of his death or born thereafter, should have the bulk of his estate. He clearly did not intend that his daughters, Mrs. Berry and Mrs. Ferguson, should have it. At the death of the lives in being (testator's daughters), all of the grandchildren will necessarily be in being and determined. Johnston wanted all of his grandchildren to take, not just those living at the time of his death. If this were the only choice, we would not hesitate to take it. And it would be consistent with the three lines of authority discussed above, as being a valid vested interest subject to partial divestment by an invalid gift. However, it would not effectuate testator's dominant purpose as substantially as another established and logical principle of law and line of cases pertinent to this problem.

The second alternative to prevent failure *in toto* of a class gift which is partially invalid is supported by reasoned precedents which we think are pertinent to this will. It is the saving principle of cy pres or equitable approximation as applied to testamentary gifts. Cy pres in the United States is a doctrine of approximation, is applicable to devises, and is an essential element of equity jurisdiction. It is a simple rule of judicial construction, designed to aid the court to ascertain and carry out, as nearly as may be, the intention of the donor. It is applicable where it is impossible beneficially to apply the property left by the testator in the exact

way he provided, and his directions cannot be carried into effect *in toto*. 10 Am. Jur., Charities, Secs. 123, 124.

The leading case on this point is Edgerly v. Barker, 66 N. H. 612; 31 A. 900, 28 L. R. A. 328 (1891). In an opinion by Chief Justice Charles Doe, the court considered a will in which the testator left surviving him an unmarried daughter and a married son, 35 years of age, who had a wife and four children living at the testator's death. Barker committed the bulk of his estate to trustees, and provided, among other things, that "when the youngest of said children (of the testator's son) shall arrive at the age of forty years, then all my estate shall be theirs, to have and hold the same, to them and their heirs." The son sought construction of the will, and contended this provision was void because inhibited by the rule against perpetuities, the gift being to grandchildren both born and unborn. This contention was rejected.

The court said the dominant idea of the whole will was that testator's grandchildren should have the bulk of his estate, and no less dominant was his determination that his own children should not have it. It assumed the gift was contingent. The question was whether testator's appointment of the time of vesting in the grandchildren was wholly or partially void for remoteness, because he said "forty" instead of "twenty-one"; and whether his inability to postpone vesting as long as he wished would justify not giving the property to those to whom he devised it. Testator's two children were the lives in being. The doctrine of general intent is a rule of approximation, which makes the least sacrifice of a testator's declared intention, rejecting no more of his will than the law makes necessary, and preferring the greater part and the weightiest intent. The dominant intent, the court said, was that testator's grandchildren receive the property. The time of receiving it was sec-

ondary. The last nineteen of the forty years were too remote, the remainder of the time and of the will was valid. The appointed time was changed by an intended approximation, because a testator's disposition is not invalidated beyond the bounds of necessity. ''The construction is cy pres because it is an ascertainment of his intent.''

His intent that his grandchildren should have the remainder overrode the lesser intent that they should not have it until the youngest was forty years old. The latter was modified by his intent that they have it. The forty years were reduced to twenty-one by testator's general approximating purpose appearing from the will. Hence the court directed that the estate be divided among the grandchildren when the youngest of them reached twenty-one instead of forty years of age. The exact operation of the will was changed, but it was done upon a basis of equitable approximation, that it was better to arrest the process of alteration short of the point of total avoidance, if the law can sanction any part of testator's plan.

Three analogies were cited by the court: A lease of forty years, made under a power to lease for twenty-one years, is good for twenty-one; a testamentary gift to a tenant for life of a power to lease for sixty-three years is not wholly void, under a statute restricting such periods to twenty-one years, but void only for the excess; and attempts by testator's to create successive life estates extending beyond the limit fixed by the rule against perpetuities, in which the courts gave effect to the devises as far as possible. Persons no less than time are amenable to the operation of the American doctrine of cy pres or equitable approximation. Jackson v. Brown, 13 Wend. 437 (N. Y. 1835).

The problem is one of separability and of construction, not a ''remorseless'' application of law. Further, separability has been applied where gifts were made to

a plurality of persons, some of the provisions being repugnant to the rule against perpetuities, while others were not. The latter were separated from the void ones and upheld, under the principle of equitable approximation. In re Kerns' Estate, 296 Pa. 348, 145 A. 824 (1929); Johnson v. Preston, 262 Ill. 447, 80 N. E. 1001 (1907).

The approximation doctrine has been applied to trusts for accumulation. Thellusson v. Woodford, 4 Vesey 227, 31 Eng. Rep. 117 (1798). The subsequent Thellusson Act limited trusts for accumulation to twenty-one years from the death of testator. In Griffiths v. Vere, 9 Ves. Jr. 127, 32 Eng. Rep. 550 (1803), a testamentary trust was held valid for the period allowed by the statute, twenty-one years, and void only as to the excess over that period. To the same effect are Longdon v. Simson, 12 Ves. Jr. 295, 33 Eng. Rep. 113 (1806), and In re Lady Rosslyn's Trust, 16 Sim. 390, 60 Eng. Rep. 925 (1848).

In Hussey v. Sargent, 116 Ky. 53, 75 S. W. 211 (1903), the Kentucky Court applied the approximation doctrine to a trust for accumulation created by the will of a citizen of New Hampshire. The trust in favor of the grandchildren was held valid by reducing the period of accumulation from thirty-three years to twenty-one years. Pennsylvania's statute on trusts for accumulation, similar to the Thellusson Act, was held to invalidate trust provisions only to the extent of the excess not permitted by the statute. Brown v. Williamson's Executors, 36 Pa. St. 338 (1860).

Another established analogy is this: A testator devises his estate to his grandchildren in equal shares, and then directs that of the share of each granddaughter the income shall be paid to her for life and the principal conveyed to her children in fee. The gift to the children of the granddaughter is bad for remoteness, the modification of the devise is rejected, and each granddaughter

takes a fee. Whitehead v. Bennett, 22 L. J. Ch. 1020; Gray, Secs. 880, 423 et seq., 431. In short, when there is a good absolute gift, and "the settlor or testator goes on, in an additional clause, to modify the gift, and, by modifying it, makes it in part too remote, the modification is rejected *in toto* and the original gift stands." Ibid., Sec. 423; Sears v. Putnam, 102 Mass. 5 (1869), Comment in Gray, Sec. 429.

In Fitchie v. Brown, 211 U. S. 321 (1908), testator, domiciled in Hawaii, left a will disposing of a large estate, and providing that the balance of his estate was to be placed in trust "for as long a period as is legally possible, the termination or ending of said trust to take place when the law requires it under the statute." Upholding this clause, the court stated that its duration was restricted to the period defined in the rule against perpetuities, and legal for that period, namely, lives in being at its creation and twenty-one years thereafter. Fitchie v. Brown applied the principle of separability and equitable approximation, and held that a testamentary trust should be given effect as far as permitted by the rule against perpetuities.

The English Property Act of 1925 incorporates the cy pres modification adjudged in Griffiths v. Vere. Law of property Act (1925), XV Geo. 5, Ch. 20, Sec. 163; see Mass. Acts, 1954, c. 641; Vt. Acts of 1957, No. 177.

James Quarles comprehensively discusses The Cy Pres Doctrine: Its Application to Cases Involving the Rule Against Perpetuities and Trusts for Accumulation, in 21 N. Y. U. Law Q. Rev. 384 (1946). He concludes: "It appears that the cy pres doctrine, for a long stretch of years, has been applied in Perpetuity and Income Accumulation cases and found to work satisfactorily by England, New Hampshire, New York, and Pennsylvania; that it was applied in Kentucky in a case involving the will of a New Hampshire testator; and that the doctrine

has been approved and made use of by the Supreme Court of the United States."

New Hampshire has consistently followed its 1891 decision in Edgerly v. Barker. Wentworth v. Wentworth, 77 N. H. 400, 92 A. 733 (1914); Flanders v. Parker, 80 N. H. 566, 120 A. 558 (1923); Gale v. Gale, 85 N. H. 358, 159 A. 122 (1932); Amoskeag Trust Co. v. Haskell, 96 N. H. 89, 91, 70 A. 2d 210, 71 A. 2d 408 (1950); Merchants National Bank v. Curtis, 98 N. H. 225, 97 A. 2d 207 (1953).

Leach and Tudor think the Rule adopted in Edgerly v. Barker is sound, and "difficulties have not arisen". Ibid., pp. 210, 41, 183, 194, 202, 233; see also 6 American Law of Property, Sec. 24.26, fn. 2. Simes and Smith conclude that Edgerly v. Barker is a well-considered opinion. Simes and Smith, Secs. 1257, 1265. John Chipman Gray thought Edgerly v. Barker was unsound. Gray, The Rule Against Perpetuities (4th ed., 1942), Secs. 857-893. However, the fourth edition, edited by Roland Gray, concedes, in effect, that the rule of Leake v. Robinson is illogical, and Leach's argument, that it is a matter of construction and separability, is "difficult to meet except upon the ground of authority." Gray, at pp. 396-397.

■■ ■ The doctrine of equitable approximation is a basic part of equity jurisdiction. It is a rule of judicial construction designed to carry out the intention of the donor, and is applicable to devises. 10 Am. Jur., Charities, Secs. 123-124; 14 C. J. S., Charities, Secs. 50, 52; 2A Bogert, Trusts and Trustees (1953), Secs. 433, 434. In National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649 (1933), this Court refused to adopt the cy pres doctrine insofar as it comprehends the exercise of the ancient perogative power as to charities. This is generally the rule in the United States. 14 C. J. S., Charities, Sec. 52. In *Savarika* a charitable trust was held to be invalid because of indefiniteness in all of its

characteristics. However, *Savarika* recognized that the modified American doctrine of equitable approximation is an essential element of equity jurisdiction. 167 Miss. at 593. Mississippi Childrens Home Society v. City of Jackson, 230 Miss. 546, 555, 93 So. 2d 483 (1957), again recognized the equitable doctrine of approximation, as distinguished from perogative cy pres, but declined to apply it in that instance because the donor himself had declared how the charitable trust should be administered. See also 4 Pomeroy's Equity Jurisprudence (5th ed., by Symons, 1941), Secs. 1027-1029; 4 Scott, Trusts (2d ed., 1956), Secs. 395 *et seq.*

██ ██ In summary, the American doctrine of equitable approximation is supported by established precedents related to the problem in this case. It should be applied here. Moreover, it is logical and equitable. Appellees want us to strike down the dominant idea of the entire will, that testator's grandchildren should have the bulk of his estate, and thereby to vest it in his daughters, despite his manifest intent that they should not have it. The time when the grandchildren should have the estate was secondary and subordinate to the intent that they should receive it.

Appllees seek to overthrow this dominant idea and have the trust declared entirely void for remoteness, because testator was unable to postpone the vesting of the property for as long as he wished, when the youngest grandchild, born and unborn, shall become twenty-five years of age. If he had said, "when my youngest grandchild (whether now living or hereafter born) shall become twenty-one years of age", the validity of the devise to them could not be questioned. The issue is one of separability and of interpretation, not of arbitrary application of a rule of law. If an examination of the testator's will in the light of the circumstances in which it was written leads to the conclusion that his general dispositive intent would be better carried out by invali-

dating the gift *in toto,* rather than reducing the age contingency to twenty-one within the period of perpetuities, then the entire gift should fail. But that circumstance does not exist in this case.

Here as in Edgerly v. Barker testator's dominant intent should be effectuated, to give his grandchildren the bulk of his estate. The intent that they should have it when the youngest reached twenty-five was only secondary. The latter is subordinate to the former. That which is dominant should be carried out by an adjudication, under the doctrine of equitable approximation, that the estate shall be distributed to testator's grandchildren when the youngest reaches twenty-one years of age. This adjudication rejects no more of the will than the law makes it necessary to reject. The time is changed by an intended approximation, because this is an ascertainment of his intent. The will is not invalidated beyond the bounds of necessity. The twenty-five years are reduced to twenty-one by testator's general approximating purpose and dominant intent.

Furthermore, there is no evidence in this will that Johnston intended a partial intestacy; the entire document indicates the contrary. This application of equitable approximation is in accord with the able opinion of the New Hampshire Supreme Court in Edgerly v. Barker, subsequent cases following that decision and applying the principles of construction and separability, at least three independent lines of authority, and the views of most of the scholars who have worked extensively in this field. More importantly, equitable approximation carries out the dominant, primary idea of the testator, and at the same time preserves the policy of the rule against perpetuities.

Accordingly, the suggestion of error filed by appellees is overruled. However, the judgment is modified and corrected by striking therefrom the phrase ''in all respects'', prior to the phrase ''it is ordered''; and in

paragraph 1 of the judgment, after the phrases "to be valid in all respects", there shall be inserted the following, preceded by a comma: "except that by equitable approximation the trust shall continue and terminate when the youngest grandchild (whether now living or hereafter born) shall become twenty-one years of age, but in no event for a longer period than thirty-five years from the date of the said will."

Suggestion of error overruled; judgment modified and corrected.

All Justices concur.

## ON MOTION

McGehee, C. J.

After decision of this case, Carter v. Berry, 136 So. 2d 871, appellees filed a suggestion of error. The Court requested responses thereto and rebuttal brief by appellee. After thorough consideration by the Court *en banc,* the suggestion of error was overruled. Appellees have now filed a "motion for authority to file second suggestion of error."

■ ■ Supreme Court Rule 14 (3) states: "After a suggestion of error has been sustained, or overruled, by the Court, no further suggestion of error shall be filed by any party." The Court has consistently applied this rule over the years, and has refused to accept for filing a second suggestion of error, after a case has been thoroughly considered on the merits and on a first suggestion of error. Amite County v. Mills, 138 Miss. 222, 238, 102 So. 737 (1925); Ball v. State, 203 Miss. 521, 527, 36 So. 2d 159 (1948); Continental Southern Lines v. Klaas, 217 Miss. 795, 853, 65 So. 2d 575 (1953); Snowden v. Webb, 217 Miss. 664, 683, 64 So. 2d 745 (1953). The only exception to this rule was applied where a question of jurisdiction under unusual circumstances was

involved. The Home Insurance Company v. Watts, 93 So. 2d 848 Miss. 1957).

Appellees' motion for authority to file a second suggestion of error states that under Rule 33 the Court may dispense with any of the rules to advance justice or to avoid surprise; that some of the authorities in the court's opinion on suggestion of error were not advanced or relied upon by either side in their briefs; and that appellees have an adequate answer to them.

This case has been thoroughly and fully considered. There were elaborate briefs by both sides on the original submission to a quorum of the judges. On suggestion of error reply briefs were requested and filed, and the matter was considered *en banc*. We see no sound basis for setting aside a long established rule and reconsidering additional briefs. We decline to do so. Hence the motion for authority to file a second suggestion of error is overruled.

Motion for authority to file second suggestion of error overruled.

All Justices concur.